UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
(BUFFALO DIVISION)

24 CV 872

| | |
|---|---|
| Petitioner: ~~Dominique Calhoun~~ Dominique C. Calhoun ) | Case : _____ |
| ) | |
| -vs- ) | COMPLAINT |
| ) | |
| Defendants: Phillip Dabney Jr. Esq. , ) | |
| Byron Brown, Daniel Derenda, Joseph Mullen, ) | DEMAND FOR JURY TRIAL |
| Shawn Mccabe, Jospeh Paszkiewicz, ) | |
| Crystal Rodriguez-Dabney, Abigal Rodriguez, ) | |
| Officer Jane Doe Central Booking, ) | |
| Mugshot Technician John Doe ) | |
| Christopher Scalon, John Flynn Esq. District Attorney ) | |
| Steven Earnhart Esq, Assistant District Atty. ) | |
| Law Offices of Phillip Dabney Jr. Esq. ) | |
| The City of Buffalo, New York ) | |
| Erie County, New York ) | |
| Buffalo Police Department ) | |

UNITED STATES DISTRICT COURT
FILED
SEP 16 2024
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

**COMPLAINT AND DEMAND FOR GRAND JURY TRIAL**

1.      Plaintiff, Dominique Calhoun, brings this action against Defendant/s
PHILLIP DABNEY JR. ESQ. et al., and alleges upon information, the record of
previous proceedings, and belief and hereby submits the following for
consideration by the honorable court.

## NOTICE OF CLAIM

2.      The 180-day time period may be subject to equitable tolling. See Pritchard v. State, 163 Ariz. 427, 430, 788 P.2d 1178, 1181(1990) (holding that filing a timely notice of claim is not a jurisdictional prerequisite to bringing suit); Kosman v. State, 199 Ariz. 184, 186-87, ¶¶ 10-11, 16 P.3d 211, 213-14 (App. 2000) (finding the 180-day period could be subject to equitable tolling or excusable neglect). Shakur v. Schriro at p. 6-7(Ariz. App., 2011).

3.      Plaintiff, filed a timely notice of claim against the City in compliance with General Municipal Law Section 50 on April 10, 2015, which was within 90 days of the January 31, 2015 incident. By stipulation, the City held a 50-h examination of plaintiffs claim on June 11, 2015 at 11:47am.

4.      This Plaintiff's action was not commenced within one year and ninety days after the happening of the events upon which these claims arise as the Plaintiff's Attorney PHILLIP DABNEY JR. ESQ. did conspire with the CITY OF BUFFALO to commit fraud by misleading the Plaintiff and purposely missing the deadline for the action to be filed by January 31, 2018. Conspiracy has a statute of limitations of 7 years. The Plaintiff has a reason for excusable neglect due to the direct interference for her to file action by The CITY OF BUFFALO.

For the record of the court the Plaintiff served another Notice of Claim to The City of Buffalo and Erie County within 30 days of filing this claim.

## APPLICATION OF LIBERAL CONSTRUCTION

5.      Plaintiff DOMINIQUE CALHOUN appears here in her pro se status. As such, this Plaintiff respectfully requests that her pleadings herein will be liberally construed by this honorable Court, pursuant to the standards established by the Supreme Court of the United States in

*Haines v. Kerner*, 404 U.S. 519 (1972) (Holding that: " a pro se litigant's pleadings, "however inartfully pleaded," are held to the most liberal of standards because pro se litigants may be less capable of formulating legally-competent initial pleadings.)

## JURISDICTIONAL STATEMENT

6.     This Court has jurisdiction over these matters pursuant to 42 U.S. Code § 1983. A suit brought under 42 U.S. Code § 1983 is a civil action for deprivation of rights. ("anyone who deprives a United States citizen of rights, privileges, or immunities secured by the Constitution and laws is liable to the injured party. The injured party can take action at law, suit in equity, or other proper proceeding for redress.") (See:42 U.S.C. § 1983. Section 1983 provides in pertinent part: Every person who, under color of any statue, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction on thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party.)

## 28 U.S.C. § 1332; Diversity of Citizenship

7.     This court has jurisdiction over these matter pursuant to U.S.C. § 1332, federal courts may hear cases in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000. In that kind of case, called a diversity of citizenship.

8.     The Plaintiff is a resident of Fulton County, GA. The Defendant(s) are residents of and/or work in of Erie County, NY. The Plaintiff is suing for 2.5 million dollars in damages. This Honorable Court has jurisdiction over this subject matter.

9.     Jurisdiction and venue is proper here pursuant to 28 U.S. Code § 1391 which provides in relevant part that "28 USC §1391. Except as otherwise provided by law—(1)this section shall govern the <u>venue</u> of all civil actions brought in district courts of the United States; and (2) the

proper <u>venue</u> for a civil action shall be determined without regard to whether the action is local or transitory in nature." (See, e.g., _Monroe v. Pape_, 365 U.S. 167 (1961) (holding that officials acting in abuse of their authority who deprive an individual of a constitutional right may be liable under § 1983.)(See also, _Brown v. State of New York_, 89. N.Y.2d 172, 674 N.E.2d 1129, 52 N.Y.S.2d 223 (1996). 2 N.Y. CONST. art. I, § 11.)  In Brown, the New York Court of Appeals held that individuals may assert claims for compensatory damages for violations of their rights protected by the equal protection guarantees of the New York State Constitution.

10.     Additionally, Jurisdiction is conferred upon this Court by 28 USC §§ 1331 and 1343, supplemental jurisdiction over Plaintiff's state law claims is conferred upon this Court by 28 U.S.C. §1367;

11.     Venue is properly laid in the Western District of New York Pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated.

12.     Article III of the U.S. Constitution provides Federal Courts can hear all cases in law and equity arising under this Constitution, [and] the laws of the United States.  The Supreme Court has interpreted this clause broadly, finding that it allows federal courts to hear any case in which there is a federal ingredient, see _Osborn v. Bank of the United States_, 22 U.S. 738 (1824)

13.     Under 28 U.S. Code § 1332 Diversity Jurisdiction this court can here the following actions; Breach of Contract, Legal Malpractice, Aiding & Abetting, Defamation, Perjury 2nd Degree, Forcible touching, Sexual Abuse 2nd degree, Kidnapping 2nd degree, unlawful imprisonment 2nd degree, importation or transportation of obscene material.

14.     This court also has jurisdiction over these matters pursuant to United States Code 42 U.S.C. § 1983 - provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations. 18 USC § 1365(h)(4)- bodily injury. 18

U.S. Code § 371-Conspiracy to commit offense or to defraud United States. 18 U.S. Code § 2-Aiding and Abetting, the Deprivation of rights under color of law under 8 U.S. Code § 242. Breach or violation of required contract terms. 18 U.S.C. § 1462- Importation or transportation of obscene matters. District courts; and whatsoever rules, laws, regulations and Federal Rules of Civil Procedure may apply. The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States.

**<u>NATURE AND CAUSE OF ACTION</u>**

15.    The criminal misconduct, cover ups, and corruption involving all of the Defendants, (herein after named "Defendants" or "codefendants"), either jointly and/or severally in both their personal and/or administrative, and/or illegal judicial capacities.

16.    The Petitioner also brings this lawsuit pursuant to pursuant to 42 U.S. Code § 1983.

17.    As to the element of causation, this plaintiff alleges that the unlawful conduct of all of the Defendants was the proximate cause of the plaintiff's injuries. *Harmoni International Spice, Inc. v. Hume*, 914 F.3d 648, 651 (9th Cir. 2019)

18.    The Defendants did knowingly and willfully conceal and coverup civil rights violations at the hand of the Buffalo Police. They have concealed and conspired to cover up violent, abusive, neglectful, predatory, criminal and harmful acts against residents, the Plaintiff being one.

19.    The actions of the Defendants have caused The Plaintiff severe mental anguish and she seeks compensatory and punitive damages. The Plaintiff has had many counseling sessions regarding feelings of fear, embarrassment, anger, sadness, anxiety, distrust, and loss of consortium, due to the actions by all Defendants, who all at some time and in some way participated directly or indirectly in this criminal abuse and conspiracy of the Plaintiff's assault, false imprisonment and sexual abuse in violation of the laws of the State of New York and the United States

20.     The Plaintiff has worked for the same company for 8 years. As an auditor her job requires attention to details and mental concentration. When national/local killings or assaults have happened at the hands of the Police, The Plaintiff have taken short term disability for months in direct connection to PSTD and depression surrounding this incident, being fraudulently mislead, and no one ever being held accountable for what occurred to her. It has directly affected her work performance during these times.

21.     All named Defendants concealed and covered up multiple civil rights violations committed by Defendants Buffalo Police Officers JOEPSH MULLEN, SHAWN MCCABE and JOSEPH PASZKIEWICZ.  Under the guise of pretending to investigate civil rights violations of Buffalo Residents through complaints to Internal Affairs, Common Council, and the Commission of Citizens Rights & Community Relations. These violations involved bodily injury, unlawful search and seizure, unlawful strip/body searches, sexual abuse, excessive force, and unlawful imprisonment/kidnapping. Many residents throughout the CITY OF BUFFALO, specifically the Plaintiff, civil rights have been violated and the crimes have been covered up, which is Conspiracy and in violation of the laws of the United States, as set furthermore specifically herein below.

22.     Defendant PHILLIP DABNEY JR. ESQ., in conjunction with and through conspiracy and direct involvement in these crimes, with the aiding and abetting of the other named Defendants did conspire and actively jointly and severally covered up, criminal activity in conjunction with all other named Defendants.

23.     Between 2015- 2018 and 2020-2021, as the Plaintiff's attorney, PHILLIP DABNEY JR. ESQ. purposely missed the deadline to file a civil action against The Defendants The CITY OF BUFFALO, and named Buffalo Police Officers. The Defendant did willfully commit fraud and mislead the Plaintiff about the details of her case by telling her the civil action was dismissed by a judge, after he missed the deadline. 6 Months after committing Fraud and legal malpractice, The Defendant PHILLIP DABNEY JR. ESQ. did take a job with the Defendant The

CITY OF BUFFALO.  The Defendant Phillip Dabney Jr. has a pattern of unlawfully disposing of cases his clients have against the Buffalo Police, in which they never recover relief from.

24.     All Defendants, including PHILLIP DABNEY JR. ESQ. as a current CITY OF BUFFALO city court Judge who took an oath to uphold the law and his codefendants as accomplices, aid and abettors, and coconspirators have knowingly and willfully refused and neglected to perform their legal duties of office owed and demanded from their positions and employment owed to people in the state of New York.

25.     All Defendants have knowingly and willfully refused to follow, neglected, and violated the United States Constitutional Laws and rules governing the Police Officers, Courts, and Investigatory bodies required to ensure the safety of residents in Buffalo NY. They have denied constitutionally guaranteed due process to the Plaintiff and other residents.

## PARTIES

26.     **The Plaintiff, DOMINIQUE CALHOUN,** is currently a resident of state of Georgia, County of Fulton. During the time of these occurrences (2015-2022), she resided in the state of New York, County of Erie, City of Buffalo.

27.     **The Defendant CITY OF BUFFALO:** This government entity is located in Erie County, New York.  The City of Buffalo employes The Buffalo Police, Report Technician, Mayor, Buffalo Police Commissioners, Internal Affairs, Commission of Citizens Rights & Community Relations and the Common Council members.

28.     **The Defendant ERIE COUNTY:** This government entity is located in New York. Erie County employs the District Attorney.

29.     **The Defendant THE BUFFALO POLICE-** Per The City of Buffalo Charter: The police department is responsible for preserving peace and order, preventing violations of the law,

detecting and apprehending criminals, protecting the rights of people and property, and safeguarding public health.

30.      **The Defendant JOESPH F. MULLEN III** is a City of Buffalo Police Officer, his badge number is P2938. He was hired with the Buffalo Police Department July 31, 2009. He currently works in the Unit E District in Buffalo, NY.

31.      **The Defendant SHAWN MCCABE** is a City of Buffalo Police Officer, his badge number is P3384. He was hired with the Buffalo Police Department August 1, 2014. He currently works in the unit E District in Buffalo, NY.

32.      **The Defendant JOSEPH E. PASZKIEWICZ** is a City of Buffalo Police Detective, his badge number is D619. He was hired with the Buffalo Police Department January 18, 2008. He currently works in the Safe Streets Force unit in Buffalo, NY.

33.      **The Defendant Mayor BYRON BROWN** Per the City of Buffalo Charter:  The City of Buffalo Mayor shall be the chief executive officer of the city and shall maintain peace and good order and enforce the laws therein and shall supervise and direct all department heads and see to it that the duties of all other city officers, departments, boards, commissions and other city agencies are faithfully performed and shall have authority at all times to examine their books, papers, records and accounts and the moneys, securities and property of the city in their possession and may in his or her discretion exercise such authority through the director of the budget or otherwise. The mayor shall also exercise such powers and perform such duties as are imposed by this act and by any local law or ordinance and by any provision of general law.

34.      **The Defendant DANIEL DERENA: Police Commissioner/ Overseen Internal Affairs Retired: January 17, 2018:** Per the City of Buffalo Charter: The City of Buffalo police commissioner is responsible for the final decision on discipline for Buffalo Police Officers and

internal affairs complaints.

35.     **The Defendant BYRON LOCKWOOD: Police Commissioner/ Overseen Internal Affairs**
**Retired: February 24, 2022:** Per the City of Buffalo Charter: The City of Buffalo police
commissioner is responsible for the final decision on discipline for Buffalo Police Officers and
internal affairs complaints.

36.     **The Defendant CRYSTAL RODRIGUEZ-DABNEY Esq (2008-2016).**- The City of Buffalo
Executive director of the Commission of Citizens Rights & Community Relations for the City of
Buffalo (CCRCR) from 2008-2016. She was the Chief Diversity Officer for the City of Buffalo from
2016-2018. She was also the Deputy Mayor for the City of Buffalo from 2022-2023.  "Head of
the City department responsible for reviewing and monitoring use of force complaints and
allegations of police misconduct. The Commission works closely with the Buffalo Police
Department to develop initial and continuing training programs in community relations and
respect for citizens' rights as well as the standards and procedures for investigating, acting
upon, and resolving complaints of police misconduct.

Upon completion of Internal Affair's investigation of a complaint of police misconduct, the
Commission reviews the police department's file on the investigation; The Commission also
conducts investigations of incidents, patterns and causes of discrimination on grounds of race,
ethnic background, cultural background, language, religion, gender, sexual orientation,
disability, nationality and age in the City of Buffalo and makes recommendations for policy
changes designed to improve cultural relations. Keeping in line with the department's mandate,
the Commission develops programs aimed at improving relations among city's racial, religious,
ethnic, and other communities and building an inclusive sense of community throughout the
city."

37.     **The Defendant ABIGAIL RODRIGUEZ – The City of Buffalo Central Booking Report Technician-** Her duties was to Process requests for warrant checks, criminal history checks, and other police related computer and manual checks; Maintains all records concerning police operations including report taking (crime reports, accident reports, etc.) from Police Officers, Walk-ins; may take telephone reports and reports through other electronic means; logs of all transactions; Maintains a record of and is responsible for all property taken from prisoners at central booking until same is either turned over to the Property Officer or is forward to City Court with the prisoner as the case may be.

38.     **The Defendant Officer Jane Doe in Central Booking-** The Female City of Buffalo Officer who conducted the unlawful Strip/Body search on the Plaintiff in the City of Buffalo Central Booking. Unknown what duties are.

39.     **The Defendant JOHN FLYNN ESQ. – Erie County District attorney (2017-2024) -** Per the Erie County charter the Erie County District Attorney's Office investigates crimes, provides legal advice, and prosecutes cases in court. They also work with local, state, and federal law enforcement agencies.

40.     The Defendant **STEVEN EARNHART ESQ.– Assistant Erie County District attorney (2015-** Per the Erie County charter the Erie County District Attorney's Office investigates crimes, provides legal advice, and prosecutes cases in court. They also work with local, state, and federal law enforcement agencies.

40.     **The Defendant Councilman CHRISTOPHER SCALON (2012-Present). -** Per chapter 3-5 Powers of the Common Council of The City of Buffalo charter: (o) to investigate and inquire into all matters of concern to the city and its inhabitants and to require and enforce by subpoena the attendance of witnesses or the production of documents at such investigations. As a member of the Police Oversight Committee, he meets with the Commissioner of the Buffalo Police

Department and key staff on a consistent basis to discuss training, patterns and trends of complaints, various police activities and programs, community relations initiatives and policy. He reviews complaints alleging police misconduct and reviews these items with key staff from the Internal Affairs Division of the Buffalo Police Department. He currently is the CITY OF BUFFALO Council President as of January 2, 2024.

41.      **The Defendant PHILLIP DABNEY JR. ESQ**. NYS OCA Registration #4164372 is an attorney registered in New York State with a Private business of The Law Offices of PHILLIP DABNEY JR. ESQ. (2004-2019). The Defendant PHILLIP DABNEY JR. ESQ. was hired as legal counsel to the City of Buffalo Housing Municipal Authority in November 2018. The Defendant PHILLIP DABNEY JR. ESQ. was appointed by MAYOR BYRON BROWN as Buffalo City Court Judge in December 2020, he was then elected in November 2021. As a City Court Judge he is responsible for overseeing all criminal and civil cases for the city of Buffalo in the 8th Judicial District.

## **BACKGROUND**

42.      The Plaintiff is bringing action against The named Defendant(s) for violations of her constitutional rights under 42 U.S.C. § 1983, unlawful search and seizure, Excessive Force, False Imprisonment, Kidnapping, Sexual Abuse, and The Right To Be Protected from Illegal Search and Seizures.

43.      The Plaintiff is bringing action against the named Defendant(s) for Conspiracy under, 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights and 18 U.S. Code § 371 Conspiracy to commit offense or to defraud United States.

44.      The Plaintiff is bringing action against the named Defendant(s) for the Deprivation of rights under color of law under 8 U.S. Code § 242.

45.      The Plaintiff is bringing action against the Named Defendant(s) under 28 U.S. Code §

1332 Diversity Jurisdiction for Breach of Contract, Legal Malpractice, Aiding & Abetting,

Defamation, Perjury, Forcible touching, Sexual Abuse 2nd degree, Kidnapping in 2nd degree,

unlawful imprisonment in 2nd degree,  importation or transportation of obscene material.

46.      Specifically, the Plaintiff asserts that on January 31, 2015, the Defendants Officers

JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ wrongfully arrested her, and

conducted an illegal strip-search and a body search without probable cause or merit, in

violation of her constitutional rights. (*Id*). Plaintiff is seeking $2.5 million in damages, as well as

costs and attorney's fees, as provided by 42 U.S.C. § 1988. Plaintiff is also seeking treble

damages due to the fraud, conspiracy, and disregard for the law.

47.      On January 31, 2015 Defendants, Buffalo Police Officer JOSEPH MULLEN, SHAWN

MCCABE, JOSEPH PASZKIEWICZ, showed up to the residence of 53 Ericson Buffalo NY looking for

The Plaintiff, Dominique Calhoun because they received a call regarding a complaint from the

owner of Delevan Check Cashing Ararif Ali for Customer Trouble. The Plaintiff's mother

answered the 1st door of her home with The Plaintiff's 2-year old daughter in her hands. The

Plaintiff stood in living room and in the frame of the 2nd door leading into her home after her

mother called to the front. The Defendant Officer Mullen Stated he wanted to speak about the

incident at the check cashing and they were either going to do this the easy way or the hard

way. The Plaintiff told Officer Mullen she would come out and speak regarding the incident but

had to retrieve her shoes. The Plaintiff closed the inside door to her home to do so, leaving the

Officers on the porch and her mother and toddler still at the 1st door to the home**. *(exhibit #1;**

**Photo of outside & inside doors to residence)***

48.      The Defendants Buffalo Police Officers JOSEPH MULLEN, SHAWN MCCABE, JOSEPH

PASZKIEWICZ then opened the 2nd door by entering the Plaintiff's the residence by force and

without a warrant. The Defendant Officer JOSEPH MULLEN did cause bodily injury to the Plaintiff's 2-year-old daughter by knocking her head and body into the 1st door as he forced his way inside the living room of the residence. The Defendant officer JOSEPH MULLEN did attack the Plaintiff by grabbing her arm and causing her to fall to the floor; causing bodily injury.

49.      The Plaintiff's fiancé Morgan Eaton tried to reach out to help mother of his child off of the living room floor, The Defendant, Officer JOSESPH MULLEN turned and grabbed Morgan Eaton and placed him under arrest for obstruction. The Defendant Officer JOSEPH PASZKIEWICZ then grabbed the Plaintiff from the ground and proceeded to forcefully drag the Plaintiff through her living room, through the hallway, onto the outside porch, and down a flight of snow/ice covered stairs barefoot. The Plaintiff was 6.5 months pregnant, which was very visible at this time, and it caused bruises and scratches on her arms. *(Exhibits #2,#3;bruises, scratches; photos taken day after incident.*



**Photo of Plaintiff 6.5 months pregnant taken directly after release 2/1/2015. Photo Submitted to Internal Affairs 2/2105**

50.      The Plaintiff was brought out of her living room, onto the porch unwillingly and forcefully by the Defendant JOSEPH PASZKIEWICZ, she had no idea why she was being arrested. The Defendant Officer JOSEPH PASKIEWICZ did cause bodily injuries to the Plaintiff. *(exhibit #4; Photo of porch and snow, taken day after incident, Plaintiff's mother had shoveled it)*

51.     The Plaintiff tried to explain her side to the Defendants Officers JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ but they did not care to hear her side. The Defendants JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ unlawfully detain, falsely imprisoned/kidnapped the Plaintiff which is an illegal search and seizure and a violation of the Plaintiff's 4th Amendment rights.

52.     The Defendants Officers JOSEPH MULLEN and SHAWN MCCABE did they take the Plaintiff and place here into a police car in front her neighbors who were standing outside. They took her back to the incident location so that the check cashing owner could ID her while she sat in the back of a police car and many people were standing outside.  The Defendants JOESPH MULLEN and SHAWN MCCABE then took The Plaintiff to the E District headquarters where she was placed into a room for a long time.

53.     Buffalo Police Officer Derick Floyd was at the E district and came into the room where the Plaintiff was being held. The Plaintiff knew Officer Derick Floyd prior to this incident from being in the community. Officer Derick Floyd asked the Plaintiff why she was there? The Plaintiff explained she was unlawfully arrested. Officer Derrick Floyd said he would look into it and never came back to the room the Plaintiff was being held in.

54.     The Defendants Officer Jospeh Mullen and Officer's Shawn Mccabe then transported the Plaintiff to City of Buffalo Central Booking.

55.     After the unlawful arrest and false imprisonment/kidnapping of the Plaintiff, The Defendant Officer JOSEPH MULLEN filed an unverified misdemeanor/violation complaint in central booking against plaintiff, charging her with two separate violations of 140.05 & 20.00-Trespassing and 240. 26-1 & 20.00 Harassment in the 2nd degree. *(exhibit #5, BPD Arrest Booking Report)*

56.     The Plaintiff was subjected to an unlawful search of her body at Central Booking after she was unlawfully detained for 2 alleged misdemeanors by the Defendants JOSEPH MULLEN and SHAWN MCCABE. Plaintiff did not willingly consent to a search and when the Officers asked for her to remove her tank top which was covering her bare breasts, she refused. Officers did use verbal force and treats to get the Plaintiff to remove an article of clothing that exposed her intimate parts in front of 4 male officers. Such search was objectively unreasonable and unlawful in nature. After she was then forcibly touched around her exposed breasts and other areas by Officer Jane Doe Central Booking.

57.     When the Defendant Report Technician ABIGAIL RODRIGUEZ asked the Plaintiff if she had any injuries, The Plaintiff replied yes and showed her the bruises and scratches inflicted upon her by the defendants, Officer Joseph Mullen was present when she stated that. The Plaintiff also let her know that her body and stomach was hurting, and she was concerned because she was 6.5 months pregnant. The Defendant ABIGAIL RODRIGUEZ did purposely omit to note the Plaintiff had bruises, scratches, and pain. *(exhibit #2,#3; Photos of Plaintiffs injuries taken directly after being released.) (exhibit #6; CB Arrest Data From, Defendant checked NO for injuries)* The Defendant ABIGAIL RODRIGUEZ did purposely omit to note the tank top in the items that were checked after the unlawful search. *(exhibit #7; Central Booking Property Form)*

58.     Plaintiff asserts that it is unconstitutional to conduct strip- and/or body-cavity searches of arrestees charged with misdemeanor violations when there is no reasonable suspicion that weapons or other contraband will be found. She contends that other misdemeanor arrestees were subjected to illegal strip- and body-cavity searches. She alleges that the City failed to investigate these illegal searches and that they had become customary, in violation of written policy. Plaintiff maintains that this customary policy resulted in deliberate indifference to the right of detainees to be free from unreasonable searches *(exhibit #8 Central booking policy)*. She asserts that, as a result of defendants' acts and/or omissions, she has suffered severe

emotional distress, anxiety and depression. She has become emotionally and socially withdrawn, suffered appetite loss, suffered, loss of consortium, and has suffered sleep disorders.

59.     The Defendants Officers JOSEPH MULLEN and SHAWN MCCABE did force the Plaintiff do an unlawful strip/body search. Per the Central Booking Police policy and Federal law the Plaintiff should have never been searched by the Defendant Officer Jane Doe.

60.     A Mugshot photo was taken of the Plaintiff with her bare breasts exposed, while 4 male officers watched. This photo was saved on a hard drive, then uploaded to the PIP system. *(exhibit #9; Photo taken directly after being released from holding center showing how Plaintiff was made to take mugshot, can see bare breasts through shirt on photo. Will submit photo to judge/jury/court during discovery)* *(Internal Affairs has a copy of uncensored photo submitted directly after the incident)*

61.     The strip search the Plaintiff was forced to endure served no professional purpose as the she was arrested on misdemeanor offenses and there was no suspicion of weapons or contraband. This strip search was Unreasonable, Unlawfully, and Unconstitutional.

62.     After the events described above, processing was completed, the Plaintiff was transported to the Erie County Holding Center. A Female Holding Center officer was shocked that the Plaintiff's bare breast were showing. The Female Holding Center Officer gave the Plaintiff a hoody to cover up her bare chest before she entered the facility.

63.     The Plaintiff was then rushed from Erie County holding center after seeing the Erie County Holding Center's jail nurse and sent to Children's hospital due to craps, dehydration and physical pain. She was given an appearance ticket to appear at court.

64.     The Plaintiff went to her arraignment where she asked the court for a Public Defender as she could not afford an attorney. Without reasons disclosed to the Plaintiff she was appointed an attorney from the Erie County Assigned Counsel named Mark Pesco. The Plaintiff told Mark Pesco of the unlawful arrest. Attorney Mark Pesco Esq. never called The Defendant's Officers JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ as witnesses to discuss the unlawful arrest at the Plaintiff's criminal trial. The Defendant ERIE COUNTY assistant District Attorney STEVEN EARNHART had an unverified accusatory document *(complaint, exhibit #10)* they were charging the Plaintiff with. The Defendant ERIE COUNTY assistant District attorney STEVEN EARNHART also had statements from Internal Affairs with the officers describing unlawfully arresting the Plaintiff for 2 alleged misdemeanors without a warrant.  Per the Brady Law the Erie County district attorney had the legal obligation to disclose the statements of the Officers to the Plaintiff's lawyer/Court. That information would have reasonably changed the outcome of the Plaintiff's charges as the arrest was unlawful and Officer Mullen in fact did not base the charges off of firsthand knowledge. Defendant ERIE COUNTY assistant district attorney STEVEN EARNHART decided to conceal the information pertaining to the unlawful detainment of the Plaintiff, to protect the officers wrong doings.

65.     On May 21, 2015, The Plaintiff pleaded not guilty before City of Buffalo Court Judge Craig Hannah to violating NYS Crime 140.05 & 20.00- Trespassing and 240. 26-1 & 20.00 Harassment in the 2nd degree. After a trial by judge, Judge Hannah found the plaintiff not guilty of 240.26-1 & 20.00 Harassment in 2nd Degree and guilty of 140.05 & 20.00 Trespassing, which he offered the Plaintiff, an ACD for. The Plaintiff accepted but noted her disagreement with the verdict as she was locked inside the facility by the owner of Delavan Check Cashing Araif Ali for

no logical reason which prevented her from leaving. The owner brandished a weapon directly at her and called her racial slurs.

66.     Judge Craig Hannah based his decision of finding The Plaintiff guilty of trespass on the fact she innocently inquired about the Businesses name of the check cashing place she was doing business in, and he believed the owner had a right to rescind his invitation to do business because she did so. The owner believed The Plaintiff was an investigator, and the question was an attack against his business license and legitimacy. Judge Hannah said the owner had the right to rescind his invitation, although the owner had already cashed The Plaintiff's check and had both the check and the money. Judge Hannah never explained in his decision why the owner had the right to then lock the Plaintiff inside, or verbally abuse her with racial slurs. Ironically unknown to the Plaintiff at the time the Check Cashing owner Araif Ali has had many investigations and claims of the same conduct the Plaintiff stated. Unknown to the Plaintiff at the time, he also was in operation criminally for years before getting his NYS Department of Financial Services license July 2014.  Judge Hannah stated he was making his decision because, "I find Mr. Ali to be credible." The plaintiff accepted the ACD for the charge of Trespass and followed the conditions.

67.     Although the Plaintiff was found guilty to one of the counts that she was arrested for, Plaintiff is/was not barred from suing civilly for abuse of process and/or false imprisonment.

In Dettelis v. City of Buffalo, WDNY 1998; they reference Cameron v. Fogarty, 806 F. 2d 380, 388 (2d Cir. 1986), cert. denied, 481 U.S. 1016, 107 S. Ct. 1894, 95. L. Ed. 2d 501 (1987), the Second Circuit held: *"Where the civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest."*

*"Here, plaintiff's § 1983 action based on an arrest without cause is without merit. Id. Therefore, Groebe's motion for summary judgment must be granted as to the § 1983 claim for arrest without probable cause."(Dettelis v. City of Buffalo, WDNY 1998)*

68.     The Defendants, Officers JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ, did not have merit, a search warrant, or probable cause that crime was being committed to enter the Plaintiff's home to arrest her for the alleged misdemeanors. The Plaintiff's due process rights were violated.

69.     The Central Booking arrest complaint against the Plaintiff is unverified and the signature is not legible: *(exhibit #10 Misdemeanor/Violation Complaint form)*

70.     On the Central Booking arrest complaint there is no timestamp when this document was created and by whom.

71.     UNKNOWN/UNVERIFIED checked NO when asked was there a Supporting Deposition attached.

72.     On the Notice To Defendant of Intention to Offer Evidence At Trial The Defendant Office JOSEPH MULLEN checked No Statements were made by the Defendant. *(exhibit #11, Notice)*

73.     The Defendant Officer JOSEPH MULLEN based his criminal complaint only off of Heresay information from the Delavan Check Cash owner Araif Ali.

74.     The Defendant Officer JOSEPH MULLEN was NOT present at 1287 E Delavan Buffalo NY 14215 on January 31, 2015, when this incident occurred between the Plaintiff and Delavan Check Cash owner Araif Ali. The Defendant Officer JOSEPH MULLEN was not "in pursuit" of the Plaintiff. He only knew of her address because the owner of the check cashing provided it to him from a customer profile of the Plaintiff. The Plaintiff had left from the incident for a while and was inside the living room of her residence, barefoot when Officers arrived at her home.

75.     When The Defendant Officer JOESPH MULLEN arrested the Plaintiff inside her home, he had no supporting evidence such as a signed Complaint from store owner Araif Ali, no side of the story from the Plaintiff as he said he did not care to hear it, no videos, no photos, no information that would support Araif Ali's claim against the Plaintiff. No Affidavit's or evidentiary materials were submitted to support the arrest of the *Probable Cause.*

76.     The Plaintiff FOIL requested the police calls during a period of (7) years from January 2014 - December 2021 to the location of the incident, Delevan Check Cashing 1287 Delavan Buffalo NY 14215. There was a total of 254 calls for the Buffalo Police assistance.

77.     The Police calls included- Call Types: Customer Trouble/Threats Harassment/ Alarm/Fraud/Larceny/Theft/Assault/Domestic Violence/Criminal Mischief/Unwelcomed Guest/Suspicious Vehicle/Soliciting

78.     From January 2014-December 2021 the Dispositions to these calls were: Advised/Warrant/False Alarm/Gone on arrival/ Referred to outside Agency/ Closed by dispatch/Cancelled/Checked OK/Radio Log/ Assisted/ No Complainant/ No Police Action/Arrest

79.     Out of the 7-year period and 254 calls made there was only 1 arrest, which was the Plaintiff. The Plaintiff's incident on January 31, 2015 call type was Customer Trouble, which ended in an arrest inside of her residence. *(exhibit #12, Police Calls Record)*

Background of City of Buffalo and Buffalo Police Articles Supporting:
**Custom or Policy within Meaning of Brown or Monell**

80.     **On February 15, 2017  the Investigative Post published in article.
        "Scant Oversight of Buffalo Police."**
https://www.investigativepost.org/2017/02/15/scant-oversight-of-buffalo-police/

"Who polices the police? The answer in Buffalo is no one. The city's police department is not subject to the type of civilian oversight that takes place in cities such as Rochester, Pittsburgh and, more recently, Chicago.

The task of investigating citizen complaints of police misconduct in Buffalo is assigned primarily to the department itself. But its **Internal Affairs Division** rarely finds officers at fault when it investigates allegations of excessive use of force. Internal Affairs cleared officers of wrongdoing in 58 of the 62 completed investigations into excessive force complaints filed between Jan. 1, 2014, and mid-September 2016. (97% of complaints cleared officers of wrongdoing)

"Some Buffalo Police Department officers appear to believe they can abuse Buffalo residents, and particularly people of color, with impunity," Anjana Malhotra, an associate law professor at the University of Buffalo, told Investigative Post.

The city's **Commission on Citizens' Rights and Community Relations**, whose mission includes helping the public file complaints of police misconduct and review the police department's internal investigations, is flawed, Investigative Post found. The Commission hasn't issued an annual report since 2009 and has not used its subpoena power to get documents when the department has not cooperated. Four of the commission's 11 seats, appointed by the mayor, are vacant. Likewise, the Common Council's Police Oversight Committee has sidestepped the issue of police accountability.

In a 2013 deposition related to a wrongful death suit against the CITY OF BUFFALO and the Police Department, former Police Commissioner McCarthy Gipson was asked: "Is it fair to say, sir, that it happens, that police officers will lie to protect other officers regarding duty-related incidents?" "I guess so, yes," he replied.

An analysis of a database of 886 Internal Affairs investigations conducted from the start of 2014 to last September shows officers are usually cleared of wrongdoing.

Out of the 62 completed investigations into excessive use of force complaints, only four resulted in any kind of discipline, police records show. In most cases, Internal Affairs found there wasn't enough evidence to support the complaints. The department does not publicly release the details of its investigations, nor does it disclose any disciplinary action taken when officers are found at fault, except in some high-profile cases.

As of September 2016, Internal Affairs had yet to rule on another 26 complaints of excessive use of force. The oldest of these complaints dates to January 2014. Internal Affairs completed investigations into an additional 182 complaints filed by citizens alleging less serious types of police misconduct such as rude behavior, improper searches and racist comments. Officers were cleared of wrongdoing in 110 of the cases, or 60 percent.

On paper, the **Commission on Citizens' Rights and Community Relations** has greater authority to safeguard against police misconduct, specifically by reviewing documents related to Internal Affairs investigations. Under the tenure of former **Executive Director CRYSTAL RODRIGUEZ-DABNEY ESQ.,** three cases of police misconduct were referred jointly by the Commission and the police department to federal prosecutors. But the commission is otherwise failing to meet its mandate or to exercise its full powers. Although Rodriguez could not access personnel files, she said the police always gave her the documents she requested, such as commissioner's notes on the officer's discipline, and she had regular meetings with Internal Affairs to review complaints. Nonetheless, Rodriguez could not see complete complaint files.

**PPG BPD Fact Sheet**
81.      **The Defendant Buffalo Police Department: Special Units and Teams**
**https://ppgbuffalo.org/files/documents/criminal-justice/policing/criminaljustice-_buffalo_police_department_fact_sheet.pdf**
"In addition to the narcotics and homicide squads, overseen by the chief of detectives, the BPD has various special units and teams.

**Housing Unit:** In 2010 the Buffalo Municipal Housing Authority made a contract with the City of

Buffalo, under which the BPD created a Housing Unit with 18 police officers and two lieutenant under the direction of a captain. According to the contract, the Housing Unit would "develop and implement a law enforcement operation plan for the improvement of public safety on various[BMHA] properties."

The work of the Housing Unit is to be "above and beyond baseline services,"such as patrols, 911 responses, and investigative follow-up; rather, the Housing Units is "dedicated to proactively addressing problem individuals and locations at targeted BMHA developments by patrolling BMHA developments and to responding to BMHA police calls in addition to baseline services being provided."

**Strike Force:** The Strike Force Unit includes 20 police officers, four from each of the five districts. The City created it in 2012 to replace the Mobile Response Unit, which had been operating since 2006 and was a main engine of the Mayor's "zero tolerance" law enforcement initiative. The City describes the Strike Force Mission as:

• Identify and target gang members
• Target and eliminate high crime areas throughout the City
• Remove illegal guns and illegal drugs from the streets
• Strict enforcement of the Mayor's zero tolerance law enforcement initiative
• Make Buffalo a better place to live, work, and raise a family.

The Strike Force and Housing Unit are closely related and use similar proactive tactics. They are the main focus of a complaint filed by Black Lives Matter-Buffalo and a coalition of Buffalo residents with the New York State Attorney General's office in August 2013, alleging a pattern of unconstitutional policing targeting people of color through illegal stops and searches, trespass arrests, traffic checkpoints, and use of excessive force."

82.     On September 5, 2017, the Investigative Post published an article titled,
                "Lawsuit Alleges Buffalo Police Misconduct.
https://www.investigativepost.org/2017/09/05/complaint-alleges-buffalo-police-misconduct/
"Anjana Malhotra, co-author of the report and complaint, said her research uncovered a "pattern and practice of discriminatory and unconstitutional police practices."
"The fourth amendment guarantees to everyone equally that one has a right to be free of unreasonable seizures," she said at a press conference Tuesday announcing the filings. "[Buffalo Police Department] does not get to choose based on race who gets that guarantee and who doesn't."

A two-year study conducted jointly by SUNY Buffalo and Cornell Law School found that the police conduct illegal stops and searches on neighborhood streets and in public housing, particularly in the city's predominantly black East Side." Currently the Buffalo Police Union is fighting in court for a judge to put a stop on the release of police disciplinary records to the public."

83.     Investigative Post published an article on September 20, 2017 titled,
                Buffalo Police Who Cross The Line.
https://www.investigativepost.org/2017/09/20/buffalo-police-who-cross-the-line/
"MAYOR BYRON BROWN established the Strike Force and Housing units to address the scourge of gangs, drugs and guns in Buffalo. While few argue with the mission of these police units, the way they go about their job is raising alarm, with some defense attorneys characterizing Strike Force and Housing Unit officers as "vigilantes" with a "cowboy mentality."

"I think they have a complete disregard for the Constitution of the United States, and most importantly, the Fourth Amendment," said Michael Stachowski, a Buffalo defense attorney. "They just seem to roust kids in the street, chase people, and hope they find contraband."

Investigative Post reviewed ten criminal court cases involving Strike Force and the Housing Unit in which judges tossed out evidence seized by officers on the grounds police had no reasonable justification to conduct the searches. In two of those instances, judges raised questions about the testimony of officers because of conflicting video evidence or its sheer implausibility.

While these cases represent only a fraction of arrests made by these units, defense attorneys said these incidents illustrate a wider pattern of misconduct by a group of Strike Force and Housing Unit officers.

Interviews with seven defense attorneys and a review of court documents, including hearing transcripts, arrest records and judicial decisions, reveal numerous examples of unconstitutional tactics and other misconduct.

For example, Strike Force officers threatened a mother with a visit from Child Protective Services if she didn't consent to a warrantless search of her house.

In another incident, they burst into a home without justification and put people in chokeholds.

And in a separate episode, officers punched someone in the head who was already in handcuffs and subdued by pepper spray.

"They are paid to supposedly get guns and drugs off the street and their way of doing that is to just hop out on every black or brown person they see," said Shaketa Redden, co-founder of Just Resisting, a racial and criminal justice group that promotes the empowerment of people of color.

Natasha Soto, the other co-founder, said these officers patrol "assuming everyone's guilty and waiting to be proven right."

It's not just lawyers and activists crying foul. Judges in the criminal cases reviewed have criticized the way in which these officers have conducted stops and searches, eventually suppressing the gun or drugs found on the defendant.

In one decision, a State Supreme Court judge wrote, "the officer's conduct was not justified from its inception." In another case, an Erie County court judge described an officer's testimony as "inventive."

But that's not the kind of behavior some East Side residents say they see when they interact with these officers. One, whose house was subject to a search in 2015 that a judge subsequently ruled was not permissible, testified that a Strike Force officer brushed off protests with a declaration: "We work for the mayor. We're Strike Force. We can do whatever the fuck

we want to do." Courts records show Strike Force, Housing Unit conduct illegal searches, sometimes submit dubious testimony.

Unlike a regular unit, Strike Force can patrol anywhere in the city. Its 20 officers are deployed to high-crime neighborhoods, and they routinely conduct traffic checkpoints. Strike Force also partners with other law enforcement agencies to gather intelligence.

While Strike Force bears most of the responsibility for implementing what Rinaldo called a "proactive" policing mission, Housing Unit officers at times work with Strike Force. The Housing Unit was created in 2010 and is made up of 18 officers who are responsible for patrolling the complexes of the Buffalo Municipal Housing Authority.

Illegal searches: Police encounters with the public are governed by the Constitution and legal precedents that have established when, how and to what extent a police officer can question, detain or search an individual.

The types of questions officers can ask, whether they can pursue someone who is fleeing or pat down someone they have stopped, for example, depend on whether they suspect a crime has happened, or is about to.

But reasonable suspicion of criminal activity "is not satisfied by a hunch, intuition, or inchoate suspicion," wrote federal Magistrate Judge Kenneth Schroeder in a decision earlier this year in which he recommended to rule out as evidence a gun because it was seized in an illegal search.

Strike Force and Housing Unit officers don't always stick to these principles, however.  "Their job [as officers see it] is to go out and prevent crime just about by any means necessary," said Kevin Steelmaker, the chief of criminal defense at the Legal Aid Bureau, a public defenders office in Buffalo. "And if that means you violate the constitutional rights of an entire group of people, that's what they're going to do."

PHILLIP DABNEY JR. ESQ. said he views these practices by select members of Strike Force and the Housing Unit as a danger not just to the "would-be criminal" but to society at large, specifically communities of color.

"I think that the danger is not that you're actually defeating crime," he said. "I think that the danger becomes that you are bullying a community."


84.         **Investigative Post Published an article on February 9, 2018, titled:**
            **Buffalo police disbanding troubled Strike Force:**
https://www.investigativepost.org/2018/02/09/buffalo-police-disbanding-troubled-strike-force/
The Buffalo Police Department is disbanding a special unit that ostensibly targets gang, guns and drug activity in the face of criticism over what some regard as its heavy-handed tactics.

Police officials confirmed the 19 officers and supervisors in the unit, known as Strike Force, will be reassigned effective March 12, 2018. The fate of a related operation known as the Housing Unit, which operates in and around the city's public housing projects, is not known.

The New York State Attorney General's Office announced in December it would investigate the tactics of these two units in response to a two-year study by University of Buffalo and Cornell law schools, which alleged a pattern of illegal searches and vehicle checkpoints, discriminatory policing and other misconduct by police.

Soto and her organization, which spearheaded the citizen effort to disband Strike Force, still want the Housing Unit abolished. So does another activist group, the Partnership for the Public Good, which tweeted: "Just like the Strike Force, the Housing Unit has been accused of many instances of misconduct and illegal action in recent years." Officers in both Strike Force and the Housing Unit have been involved in high-profile cases that led to deaths.

Unlike a regular unit, Strike Force can patrol anywhere in the city and its officers are deployed to high-crime neighborhoods. They and the Housing Unit officers also routinely conduct traffic checkpoints, which have been a flash point for public ire against the police.

Strike Force was established by MAYOR BYRON BROWN in 2012. Over time, it earned a reputation among some in the city's African American community for what was considered bully boy tactics that contributed to strained relations between police and many inner-city residents.

One witness testified in court about an interaction with a Strike Force officer in 2015 who he said told him: ***"We work for the mayor. We're Strike Force. We can do whatever the fuck we want to do."***

85.   **Internal Affairs hardly ever finds officers guilty. On January 29, 2024 the Investigative Post published an article "Policing Buffalo's police."**
https://www.investigativepost.org/2024/01/29/policing-buffalos-police/

The new Police Commissioner Joseph Gramalia testified during a police brutality trial, "I think any chief executive that's running the department would like to have the managerial ability to run a department, but that's not the contractual language that was laid out well before my time," "The arbitrator's decision, the independent arbitrator's decision and finding, is final in a disciplinary matter."

"Buffalo Police Commissioner Joseph Gramaglia and MAYOR BYRON BROWN testified last fall that the city's contract with its police union and the power it bestows on an arbitrator makes it too difficult to discipline cops accused of misconduct." A contract that the City of Buffalo entered into. Legal decisions suggest City Hall has bargained away those powers in violation of state law."

According to police reform advocates and lawyers who point to court decisions and the city's charter, which puts the commissioner in charge of discipline. Even a lawyer for the city has said that the commissioner, not an arbitrator, should have final disciplinary authority.

In a 2021 policy brief, the Partnership for the Public Good, a local nonprofit organization, cited state Court of Appeals rulings and quoted Buffalo's charter: "The commissioner of police shall be charged with the power and duty of governing and disciplining the department and the members of the police force and all subordinates and employees of the department. The city, the Partnership argued, had "an untapped power" to discipline officers outside boundaries of collective bargaining agreements. MAYOR BYRON BROWN does not agree with that position."

86.    The Plaintiff asserts that all, one, or some of the The Defendants Officers, Mullen, Mccabe, and P are/were a part of the Strike Force and/or Housing Unit. The Plaintiff lived off of Bailey Avenue on the Eastside of Buffalo, which was their targeted area.

**First Cause of Action for Violation of the Fourth Amendment as per 42 U.S.C. §1983 for the unlawful imprisonment, arrest, and entry into the home of Plaintiff by Defendants City of Buffalo Police Officers Jospeh Mullen, Shawn McCabe, and Jospeh Paszkiewicz.**

**I. Unlawful Search and Seizure**

87.    The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by the government.

88.    Plaintiff repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

89.    To maintain a claim for false imprisonment a plaintiff must establish: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement, and; (4) the confinement was not otherwise privileged. See Bernard v. United States, 25 F. 3d 98, 102 (2d Cir. 1994)

90.     Defendant Officers first intended to confine the Plaintiffs as evinced by unlawfully entering the Plaintiff's home without any legal basis to do so. They then detained and arrested the Plaintiff without consent to enter, probable cause, or a warrant; for 2 alleged misdemeanors.

91.     The Defendant Officers did force the plaintiff from her home. They did falsely imprison the Plaintiff by entering her home unlawfully and detaining her. The Defendants Officer JOSEPH MULLEN and JOSEPH PASZKIEWICZ, and SHAWN MCCABE did confine the Plaintiff and forced her into their police vehicle and locked her up to prevent escape.

92.     The Defendant Officers came unlawfully into the Plaintiff's home and falsely imprisoned her by using threats and physical force. The Defendant Officers did cause bodily injury, and accomplish a separate felony by violating Title 18, U.S.C., Section 249 by targeting the Plaintiff because she was a black resident living on the Eastside off of Bailey Avenue, which is a targeted area by the E district Police, especially housing/strike force officers.

### NY Penal Law § 135.05: Unlawful imprisonment in the second degree
New York substantive law is controlling in this diversity action.

93.     It is against the law to intentionally restrain another person without having the legal right to do so. If you do restrain a person you would have committed the crime of unlawful imprisonment. However, the use of violence is not required to be charged with unlawful imprisonment. Under New York Penal Law § 135.05, you could be prosecuted for unlawful imprisonment in the second degree if you unlawfully restrain another person. The term "restrain" is defined in New York Penal Law § 135.00(1) as intentionally and unlawfully restricting the movement of another person. The restriction must be substantial.

### Second Degree Kidnapping: New York Penal Law 135.20

94.     Kidnapping in the Second Degree, New York Penal Law 135.20, is a B Felony punishable by up to 25 years in prison, whether or not you have a prior criminal record. Assuming this is your first offense, the law mandates a sentence of no less than five years upon conviction. A person is guilty of Kidnapping in the Second Degree when he "abducts another person." That's the extent of the statute. Under PL 135.00, "abduct" means to "restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force." There is no requirement of any kind of financial motivation, or any particular motive whatsoever. This is an extremely broad statute that can cover all kinds of circumstances.

**Second Cause of Action for Violation of the Fourth Amendment as per 42 U.S.C. §1983 for the unlawful Strip and Body Search of the Plaintiff by Defendants City of Buffalo Police Officers Jospeh Mullen, Shawn McCabe, and Jane Doe Central Booking.**

### II. Unlawful Strip and Body Search

Plaintiff repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

95.     The Fourth Amendment of the United States Constitution protects the citizenry for unreasonable searches. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." Katz v United States, 389 US 347, 357 (1967).

96.     In the case, the Plaintiff was subjected to an unlawful search of her body at Central Booking after she was unlawfully detained for 2 alleged misdemeanors by The Defendants Officers JOSEPH MULLEN and SHAWN MCCABE. Plaintiff did not willingly consent to any such search and when the Officers asked for her to remove her tank top which was covering her bare breasts, she refused. Officers did use verbal force to get the Plaintiff to remove an article of clothing that exposed her intimate parts in front of 4 male officers. Such search was objectively unreasonable and unlawful in nature.

97.     After the Plaintiff was forced verbally to remove her clothing to expose her intimate parts, she was then forcibly touched around her exposed breasts by Officer Jane Doe Central Booking.

98.     The Strip Search was unlawful and unreasonable being that The Plaintiff was arrested for alleged misdemeanors. The Plaintiff should not have been strip searched pursuant to the Buffalo Police Department's own Central Booking policies and procedures and pursuant to established state law, as well as the Fourth Amendment of the U.S. Constitution.

99.     It is well established that the Fourth Amendment precludes prison officials from performing strip/body cavity searches of arrestees charged with misdemeanors or other minor offenses unless the officials have a reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.

100.    *Weber v. Dell,* 804 F.2d 796, 802 (2d Cir. 1986), *cert. denied,* 483 U.S. 1020, 107 S. Ct. 3263, 97 L. Ed. 2d 762 (1987). Plaintiff and defendants agree that *Weber* applies to the case at bar and that both a strip-search and a body-cavity search were not warranted since plaintiff was arrested for a misdemeanor, and there was not reasonable suspicion that plaintiff was concealing weapons and/or contraband.

101.    The Plaintiff can provide "affirmative evidence" that a strip-search or a body-cavity search unconstitutionally occurred after a misdemeanor arrest. Strip searches are a barbaric and degrading law enforcement tool that people accused of minor offenses should never suffer. Strip searches are Federally prohibited by law unless there is reason to believe the person is concealing weapons or other contraband.

**Third Cause of Action for Violation of the Fourteenth Amendment of having a right to Bodily Integrity as per 42 U.S.C. §1983 for the Sexual Abuse and forced Nudity of Plaintiff by Defendants City of Buffalo Police Officers Jospeh Mullen, Shawn McCabe, and Jane Doe Central Booking.**

### III. Sexual Abuse/ Body Integrity

102.     Plaintiff repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

103.     Court precedent and appellate court decisions have reiterated that the Constitution does indeed protect a right that sits at the core of human individuality: the right to bodily integrity. Furthermore, the right to bodily integrity is embodied in the notion that the State cannot deprive citizens of their freedom as articulated in the Bill of Rights and as guaranteed by the 14th Amendment. Sexual assault can never be justified as a legitimate State interest that can be rationally justified; therefore, it can never outweigh the constitutionally protected right to bodily integrity.

104.     The substantive component of the Due Process Clause under the Fourteenth Amendment secures the "right to be free of state-occasioned damage to a person's bodily integrity." Doe v. Taylor Indep. Sch. Dist. ("Taylor ISD"), 15 F.3d 443, 450-51 (5th Cir. 1994) (en banc) (quoting Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir. 1981)). A violation of the right to bodily integrity follows from "behavior of the governmental officer [that] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 523 U.S. at 847 n.8. Doe v. Rains Cnty. Indep. Sch. Dist., 66 F.3d 1402, 1406 (5th Cir. 1995) (recognizing the established "liberty interest in freedom from sexual abuse by persons wielding state authority");

105.     Physical force is not a requirement of a violation of the right to bodily integrity. See Windham v. Harris County, 875 F.3d 229, 242 n.17 (2017). Substantive due process violations can be based on mental coercion alone. See Leyra v. Denno, 347 U.S. 556, 558, 74 S. Ct. 716, 98 L. Ed. 948 (1954); see  also Rogers v. City of Little Rock, 152 F.3d 790, 797 (8th Cir. 1998) (holding

that officer's use of mental coercion to effectuate sexual assault violated the Fourteenth Amendment); Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist., 77 F.3d 1253, 1256 (10th Cir. 1996) (rejecting "that psychological abuse absent physical contact or a threat to bodily integrity is not a deprivation of constitutional rights"). Thus, we have recognized violations of the right to bodily integrity where the officer never physically touched the plaintiff and the plaintiff suffered purely psychological harm. See Petta v. Rivera, 143 F.3d 895, 903 (5th Cir. 1998); Flores v. City of Palacios, 381 F.3d 391, 400-01 (5th Cir. 2004).

106.    The Plaintiff is asking for relief under 42 USC § 1983, which provides that anyone acting under the color of law who deprives someone of their Constitutional rights "shall be liable to the injured party." Section 1983 is the statutory mechanism for the relief, but the underlying injury must be based on the violation of separate "federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)

107.        **New York substantive law is controlling in this diversity action**
            **NY Article 130.05 Sex offenses; lack of consent**

108.    (3.) A person is deemed incapable of consent when he or she is: (f) committed  to  the  care  and  custody  of  a  local  correctional facility, as such term is defined in subdivision two of section forty of the  correction  law,  and the actor is an employee, not married to such person, who  knows  or  reasonably  should  know  that  such  person  is committed to the care and custody of such facility.

                        **NY Penal Law 130.52 Forcible touching.**

109.    A person is guilty of forcible touching when such person intentionally, and for no legitimate purpose, forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire.

**NY Penal Law 130.60 Sexual abuse in the second degree.**

110.    A person is guilty of sexual abuse in the second degree when he or she subjects another person to sexual contact and when such other person is: 1. Incapable of consent by reason of some factor other than being less than seventeen years old; or 2. Less than fourteen years old.

111.    The Defendants Officers JOSEPH MULLEN and SHAWN MCCABE did cause unwanted forcible touching to the exposed breast area of the Plaintiff by Officer Jane Doe Central Booking by the use of force. The Plaintiff was incapable of giving consent as she was in custody of the Defendant Officers at City of Buffalo Central Booking.

112.    Procedurally there was no reason for four male City of Bufalo Police Officers to observe the Plaintiff being forcefully touched with her breasts exposed by Officer Jane Doe Central Booking. The Plaintiff asserts the officers were smiling and laughing while the unlawful search was being conducted. The Defendant Officers used this as a way to abuse and degrade the Plaintiff. The Plaintiff also believes the Defendant Officers used this to arouse or gratify the sexual desire.

113.    The Defendant Officer SHAWN MCCABE told the Plaintiff to calm down that everyone has to go through this process of being searched. Which was coercion as the Defendant knew that there was not a professional purpose for the unlawful search, as the Plaintiff was arrested on alleged misdemeanors.

114.    The Defendants Officers JOSEPH MULLEN and SHAWN MCCABE did cause unwanted sexual contact to the Plaintiff by Officer Jane Doe Central Booking by the use of verbal force. The act served no professional purpose and the Plaintiff told them she did not give consent. The Defendant Officer Shawn Mccabe states in his sworn Internal Affairs Statement that Officers did use verbal abuse to get the Plaintiff to comply. The Defendant Officers used this as a way to abuse, humiliate, harass, and degrade the Plaintiff.

**18 U.S.C. § 1462- Importation or transportation of obscene matters**

115.    The CITY OF BUFFALO Officer/Deputy/Technician that took the mugshot of the Plaintiff with her intimate parts exposed is guilty of Section 1465 of Title 18 prohibits anyone from knowingly transporting in interstate or foreign commerce or interactive computer service any obscene book, pamphlet, picture, film, or phonograph recording, for the purpose of sale or distribution.

116.    The Defendants The CITY OF BUFFALO, Buffalo Police or their representatives did transport interstate a photo of the Plaintiff with her intimate parts, being breasts showing. It was uploaded to an interactive computer service and distributed to the PIP System.

117.    Personnel Investigations Processing System (PIPS): PIPS is the computer system which maintains the Security/Suitability Investigations Index (SII), a repository containing over 11 million background investigation records of Federal employees, military personnel, and contractors. PIPS is also the system that NBIB uses to processes and complete background investigations. This photo of the Plaintiff was also saved on the hard drive of the Officer/Photographer who took the mugshot with her intimate parts exposed.

**18 U.S.C. § 250**
**Penalties for Civil Rights Offenses Involving Sexual Misconduct**

118.    Section 250 is a penalty statute that applies to all civil rights offenses. Section 250 makes every form of sexual assault under color of law a felony. The potential penalty varies depending on the type of sexual conduct involved (i.e. sexual act or sexual contact, as defined pursuant to 18 U.S.C. § 2246(2) and (3), respectively), as well as other attendant circumstances (e.g. whether the conduct was under or through clothing; whether the conduct involved coercion, physical force, or placing the victim in fear of varying degrees of physical harm; whether the

victim was physically incapable of showing unwillingness or was otherwise rendered unconscious by the defendant).

**Fourth Cause of Action for Violation of the Fourth Amendment as per 42 U.S.C. §1983 for the use of excessive force on Plaintiff by Defendants City of Buffalo Police Officers Jospeh Mullen and Jospeh Paszkiewicz**

**IV. Excessive Force**

119.     The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by the government.

120.     To prove Excessive Force it depends on "whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989). This objective test means that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id.

121.     Plaintiff repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

122.     The Defendants Officers did use excessive force by forcefully and unlawfully gaining access to the Plaintiff's home and restraining her by force for alleged misdemeanors.

123.     The Defendant Officers JOSEPH MULLEN did attack the Plaintiff in her living room by grabbing her arm and pulling her down to the living room floor 6.5 months pregnant. Defendant JOSEPH MULLEN did cause bodily injury to the Plaintiff by inflicting cuts, abrasions, bruises and physical pain on the Plaintiffs body.

124.     The Defendant Officer JOSEPH PASZKIEWICZ did then grab the Plaintiff in her living room and proceeded to drag her forcefully through the living room, onto the porch, down the outside

stairs, barefoot and 6.5 months pregnant. Defendant JOSEPH PASZKIEWICZ did cause bodily injury to the Plaintiff by inflicting cuts, abrasions, bruises and physical pain on the Plaintiffs body.

125.    The Defendant's JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ did cause bodily injury to the Plaintiff by unlawfully detaining her for 6 hours with no food or drink. She had not eaten prior to the arrest and her body started cramping due to dehydration. The Plaintiff had to be taken from Erie County Holding Center to Children's hospital, as she was 6.5 months pregnant.

126.    **Bodily Injury- 18 USC § 1365(h)(4)-** the term "bodily injury" means— (A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of the function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary. The Plaintiff has medical records from Erie County Medical Center and Children's hospital showing she suffered bodily injuries.

127.    There was no legal justification for Defendants Officers to use any force to gain access to the Plaintiffs home, or forcefully detain her. The Plaintiff had cuts, abrasions, and bruises. She had Physical pain, illness, and was mentally traumatized.

128.    The conduct of the Defendants Officers clearly went above and beyond the scope of their duties to detain the plaintiff. Their actions were not objectively reasonable for the alleged misdemeanors they had no warrant or probable cause for.

129.    The Plaintiff is asking for relief under 42 USC § 1983, which provides that anyone acting under the color of law who deprives someone of their Constitutional rights "shall be liable to

the injured party." Section 1983 is the statutory mechanism for the relief, but the underlying injury must be based on the violation of separate "federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979).

**Fifth Cause of Action for Violation of Breach of Contract: 41 U.S. Code § 6503 heard under 28 U.S. Code § 1332 Diversity Jurisdiction for the Breach of Contracts by Defendants Phillip Dabney Jr. Esq,. Crystal Rodriguez- Dabney Esq., John Flynn Esq.**

**V. Breach Of Contract**

130.    The elements of Breach of Contract are: 1) You must show the contract exists; 2) You did everything you were supposed to do under the contract, 3) Other party breached contract; 4) You suffered damages.

131.    New York substantive law is controlling in this diversity action. Under New York law, a plaintiff must prove the following elements to establish a cause of action based on negligence: (1) the existence of a legal duty; (2) a breach of that duty; (3) that the breach was the proximate cause of the injury; and (4) damages. See Ellis v. Mildred Elley School Inc., 245 A.D.2d 994, 667 N.Y.S.2d 86, 87 (1997); see also Japan Airlines Co., Ltd. v. Port Authority of New York and New Jersey, 178 F.3d 103 (2d Cir. 1999) (listing the four elements as: "(1) that there was a duty owed to the plaintiff, (2) lack of due care by the defendant, (3) injury, and (4) the injury was proximately caused by the defendant's breach of duty.").

**A. The Defendant Phillip Dabney Jr. Esq.**

132.    The contract existed as the Plaintiff paid The Defendant PHILLIP DABNEY JR. ESQ. a consultation fee and then subsequently signed a contingency retainer for the Defendant to represent her. He also represented her at the 50-H hearing with the CITY OF BUFFALO pertaining to her Civil case.

133.    Under the contract The Plaintiff went to the doctors, attended the required court hearings, and replied to any correspondence the Defendant may have sent her.

134.    The Defendant failed to file the case before the statute of limitations expired on or about January 31, 2018. The Defendant fraudulently told the Plaintiff her case had been dismissed because the officers were working in the scopes of their jobs after he missed the deadline.

135.    The last communication the Plaintiff had with the Defendant regarding her case was on May 1, 2018. The Plaintiff discovered the Defendants Fraud on May 26, 2020 from a FOIL request through the Erie County Supreme Court that, "no action ever filed."

### Summary of Breach of Contract: Phillip Dabney Jr. Esq.

136.    The Plaintiff paid a $50.00 Consultation fee in February 6, 2015, then retained the plaintiff March 2015 by signing a Contingency Agreement. The Plaintiff signed a standard contingency agreement which entitled him to the standard NYS Contingency fee. The most common agreement in personal injury cases in NY is a contingency agreement. There was no reason for the Plaintiff to make special arrangements or sign a specialty agreement outside the standard contingency agreement.

137.    The Defendant fraudulently continued to represent the Plaintiff after the January 31, 2018 deadline. The Plaintiff was not aware The Defendant missed any deadlines on January 31, 2018.

### Continuous Reputation: The Defendant Phillip Dabney Jr. Esq.

138.    The Defendant between March 2015-May 2018 kept telling the Plaintiff the case was looking great, he was in the middle of legal proceedings, and instructing her to continue to see her doctors.

139.    The Plaintiff has phone/text records from AT&T discussing her case with The Defendant, until he fraudulently told her it was dismissed by a judge because the officers were working in the scoops of their jobs. The Plaintiff and Defendant had no other conversations about anything outside of the details of her ongoing case. *(exhibit #13, Phone Record Summary) (Swear under oath by penalty of law all records are accurate, will provide original AT&T records during discovery)*

140.    The Plaintiff has the Transcript from a small claims case involving her non-profit (Sports Unlimited of Buffalo Inc. v. City of Buffalo), regarding football equipment for the non-profit that city workers damaged while being stored. (October 25, 2017)

141.    At the Small Claims hearing on transcript the City of Buffalo Attorney Rasheed Mcduffie mentions the Plaintiff's personal case that the Defendant was representing her for against the City of Buffalo & The Buffalo Police, Mr. Mcduffie called her personal case against the police meritless. Small Claims: Buffalo City Court (SC-001330-17) (October 25, 2017)

   **"Pg. 7 Line 2 MR. MCDUFFY: "Two years ago she filed a lawsuit against the City of Bufalo, alleging Police Brutality and misconduct, RIGHT THAT WAS TWO YEARS AGO?"**
   **"Pg. 7 Line 7 MS CALHOUN: "It's ongoing. Its not dismissed, or anything, and that ongoing right now."**
   **"Pg. 10 Line 19: MS. CALHOUN: "I have a lawsuit currently pending in court, for the city of Buffalo."**

142.    On Transcript during the small claim case the Plaintiff makes it clear that her case has merit and is still ongoing with the Defendant PHILLIP DABNEY JR. ESQ.

143.    The Plaintiff has phone records of calling the Defendant PHILLIP DABNEY JR. ESQ. on October 25, 2017, directly after the Small Claims case to inquire why Rasheed Mcduffie Esq. would be speaking in that manner. The Defendant informed The Plaintiff Rasheed Mcduffie Esq.

did not know what he was talking about, her case was still ongoing, he said Mr. Mcduffie was known for making non-factual and exaggerated statements. *(exhibit #13; phone records; see 10/25/2017 date)*

144.    The Transcripts from October 25, 2017 prove the Plaintiff still was under the belief she was being represented by the Defendant and her case was on going. The phone records until May 1, 2018 prove the Plaintiff was still under the belief she was being represented by the Defendant and her case was on going.

145.    The contract the Plaintiff signed with the Defendant was not contingent upon the outcome of her the criminal case, as the Defendant said her civil case had strong merit. The Defendant continued to represent the Plaintiff well after her Criminal case had completed May 21, 2015.

146.    The Plaintiff asserts the Defendant Breached the Contract by not upholding his Fiduciary Duty and Failing to act in the best financial interest of the Plaintiff when there was an obligation to do so. The Plaintiff asserts the Defendant fraudulently represented that he filed an action before and after the dealine of January 31, 2018.

147.    The Plaintiff asserts that after missing the deadline on January 31 2018, The Defendant did fraudently misrepresent the facts of the Plaintiff's case by telling her the action had been dismissed by the judge because the officers were working within the scoops of their jobs.

148.    The last conversation the Plaintiff had with the Defendant regarding her case was on May 1, 2018. The Defendant did take a job with the CITY OF BUFFALO as legal counsel, November 5, 2018, six months after deceiving the Plaintiff. The CITY OF BUFFALO was a Defendant in the Civil Suit the Plaintiff had with The Defendant, PHILLIP DABNEY JR. ESQ. as the attorney who was representing her.

**Discovery of Fraud: The Defendant Phillip Dabney Jr. Esq.**

149.    During the summer of May 2020 after the death of George Floyd by the hands of the Minneapolis MN Police the media was looking for stories of people who had experienced police brutality. The Plaintiff is someone the media reached out to during that time as she was speaking out against police brutality publicly.

150.    The Plaintiff tried to get information on her police brutality case for news reporters and found of the Fraud the Defendant PHILLIP DABNEY JR. ESQ. committed through an Erie County Clerk's Office FOIL request regarding her complaint against the Buffalo Police. On May 26, 2020 the results returned that "No Action Was Filed" ever in the Erie County Clerks Office.

151.    On May 26, 2020 once the Plaintiff found out of the legal malpractice/ breach of contract by the Defendant, PHILLIP DABNEY JR. ESQ., the Plaintiff tried everything she could to mediate the situation. She believed that maybe one of her elected officials could help mediate the situation, since he was now an employee of the CITY OF BUFFALO and she was a resident.

152.    August 2020, The Plaintiff reached out to Councilman Ulyses Wingo through Facebook messegner to ask if he could mediate the wrongdoing the defendant had done to her. As she belived he was the Defendant's Councilman and friend on FB. When he followed back up he said he could not assist.

153.    The Plaintiff also reached out to MAYOR BYRON BROWN's representative that worked directly in his chief of staff office, regarding the malpractice and civil rights violations. The Plaintiff spoke to them through FB Messenger June, July, August 2020. MAYOR BYRON BROWN's representative replied at the end of August 2020 and said after speaking to the the Mayor, the Mayor said he could not assist with the Plaintiff's issue regarding the Defendant, PHILLIP DABNEY JR. ESQ. Four months later in December 2020, MAYOR BYRON BROWN appointed the

Defendant to Buffalo City Court Judge.

154.    After discovering of the Defendant's fraud The Plaintiff tried to obtain an attorney to represent her for a civil legal malpractice claim, due to The Defendant's new judicial status no attorney in the area wanted to sue a sitting Judge. The Plaintiff was forced to bring her own legal action Pro Se against the Defendant in Erie County Supreme Court for Legal Malpractice on November 17, 2021. (Calhoun v. Dabney; 801282/2021)

155.    After hearing numerous answers and replies from the Defendant and the Plaintiff over 4 months, The Plaintiff's action was dismissed WITHOUT prejudice February 17, 2022 by the Honorable Judge Paul B. Wojtaszek. The order dismissed The Plaintiff's action because she only served the Defendant with a Notice of Claim and not an actual claim. This was due to her ignorance of procedural law.

156.    Instead of refiling and serving the Defendant a claim, the Plaintiff obtained a paid notarized affidavit of merit in support of her claim, from an independent attorney who reviewed the case. She requested a motion to renew/reargue, also due to her ignorance in procedural law. The Judge in that case found it was not new facts and upheld the original decision, WITHOUT prejudice.

157.    The attorney Kevin F. Guyette Esq. who wrote the Affidavit of Merit in support of the Plaintiff's case, is a former District Attorney in Broome County, New York for 5 years. He now works in private practice, he has experience with civil rights, malpractice, and excessive force cases. *(exhibit #14, Affidavit of Merit; Kevin Guyette Esq.)*

158.    During (2016-2018) The Defendant has had a pattern of disposing of cases that the CITY OF BUFFALO and the Buffalo Police are Defendants for. He also committed legal malpractice, fraud and breach of contract in another Police Brutality case, Willet v. City of Buffalo, 1:15-cv-00330, (W.D.N.Y.) filed on April 15, 2015. Buffalo Police Officer John Cirulli was found guilty of

assualt against John Willet in a criminal action filed against him. The civil action the Defendant Phillip Dabney Jr. Esq. filed on behalf of Mr. Willet was dismissed by an order filed on January 25, 2017.

159.   The order was written by The Honorable Judge Arcara in favor of the City of Buffalo and the Buffalo Police Department due to failure to prosecute. The Defendant PHILLIP DABNEY JR. ESQ. just stopped replying to proceedings on or about December 2, 2016, even after numerous court orders to reply from the Judge.

160.   Willet v. City of Buffalo, 1:15-cv-00330, (W.D.N.Y.) Order To Attorney PHILLIP DABNEY JR. ESQ.. *"The Plaintiff, however, has not bothered to oppose the City Defendants' objections. This conduct, together with the Plaintiff's failure to take discovery, strongly suggests that he no longer wishes to have his day in court, despite the Court making every effort to accommodate the Plaintiff, and despite the not-insignificant expenditure of judicial resources in doing so. Put differently, "[b]ecause [the Plaintiff] has made no effort to comply with the Court's directives or to prosecute his action, it would be unfair to the numerous other litigants who await the attention of this Court to permit [the Plaintiff's] suit to remain on the docket." Feurtado v. City of New York, 225 F.R.D. 474, 480 (S.D.N.Y. 2004).*

*Finally, the Court recognizes that dismissal is a harsh sanction, but it appears that no lesser sanction would be effective. A lesser sanction, such as a fine or payment of attorneys' fees, might compensate the Defendants for the cost they have incurred in defending a lawsuit that the Plaintiff appears to not want to pursue. But given the Plaintiff's consistent inattention to this case, a lesser sanction would ultimately accomplish very little."*

161.   The victim in that case Mr. John Willet did reach out to The Plaintiff on Facebook Messeger on  June 30, 2020 and informed her that he had no idea of his attorney PHILLIP DABNEY JR. ESQ.'s decit as he was incarcerated during that period. He stated The Defendant

kept informing him everything was going great. He found out his case was dismissed when he got out of jail and he was devestated.

162.    In a separate case filed in Erie County Supreme Court another client alleged Legal Malpractice against the Defendant PHILLIP DABNEY JR. ESQ. He claimed breach of attorney-client contract, ignorance of and failure to represent his interests in a timely manner. In this instance the Plaintiff Cornelius Boykins had an underlying case against the New York State Department of Corrections for Discriminatory practices. (Boykins v. Dabney, 812300/2016)

163.    As seen in previous cases the Defendant PHILLIP DABNEY JR. ESQ. did breach his fiduciary duty, fraudulently misled the complainant and he did miss his deadline.

## B. The Defendant CRYSTAL RODRIGUEZ DABNEY ESQ.

164.    There was an implied contract between the Plaintiff and the CRYSTAL RODRIGUEZ-DABNEY ESQ. As the Defendant worked as the paid Executive Director of the Commission of Citizens Rights & Community Relations between 2008-2016. The Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. was an attorney hired by The CITY OF BUFFALO to investigate civil rights violations of residents through complaints submitted to internal affairs. The Plaintiff was a resident of the CITY OF BUFFALO, whose Civil Rights were violated. The Plaintiff submitted a complaint to Internal Affairs 2/2015.

165.    The Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. did not investigate the Plaintiff's complaint submitted to Internal Affairs. The Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. had a Fiduciary Duty to the Plaintiff as a resident to ensure her internal affairs complaint was properly investigated. The Defendant had regular meetings with internal affairs and subpoena power to gain access to internal affairs complaints. The Plaintiff suffered pain and suffering because no one properly investigated her claims, and the officers were not held accountable for the civil rights violations that occurred to her and her family.

### Discovery of Negligence: The Defendant Crystal Rodriguez Dabney

166.     The Plaintiff did not Discover of the Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ.'s negligence and fraud until she found out about the Commission's existence through research on May 26, 2020. The same day she received the FOIL request from Erie County Supreme Court and found out her attorney The Defendant PHILLIP DABNEY JR. ESQ. never filed legal action. Legal action regarding the same civil violations The Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. was supposed to be investigating. The Plaintiff's attorney PHILLIP DABNEY JR. ESQ. was also now married to the Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ.


167.     After the Plaintiff realized the Defendant Crystal Rodriguez Dabney never investigated her complaint. The Plaintiff immediately emailed the new Executive Director Jason Whitaker on the same day May 26, 2020 and asked him to investigate her internal affairs complaint that was not investigated from February 2015.

168.     After multiple emails (May 26, 2020- June 22,2020), on June 22, 2020, Jason Whitaker told the Plaintiff he was not able to access the Internal Affairs records; although executive directors have the subpoena power to do so.


169.     After the real of 50-A on July 2020, the Plaintiff was able to receive her entire Internal Affairs file on her own through a FOIL request on April 22, 2021. Through reports, sworn interviews, handwritten notes, and emails The Plaintiff was able to see the numerous civil rights violations were not investigated by internal affairs or the Commission of Citizens Rights & Community Relations.


170.     The Plaintiff followed back up with Jason Whitaker by phone and again asked him if the commission could review her Internal Affairs Complaint because she had received the records.

Jason Whitaker informed The Plaintiff he was unable to investigate a complaint the previous Executive Director Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. did not want to investigate. After their phone conversation Jason Whitaker then sent a follow up email on November 19, 2021 advising the Plaintiff to speak with the Vice President Kenneth Simmons who was the Vice President of the CCRCR in 2015 when the Plaintiff submitted her complaint to the Commission.

171.    The Plaintiff contacted Kenneth Simmons who informed the Plaintiff that he was the current Vice President and the VP during 2015 when she submitted her complaint. He explaine during that time he did not have the power to request the information to review her Internal Affairs complaint. He said that is the job of the Executive Directors and that was the Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ's. position in 2015 when the Plaintiff submitted her complaint. He stated as the Vice President he would continually ask to have regular meetings during the Defendant's CRYSTAL RODRIGUEZ DABNEY. ESQ's term but she refused to have meetings or investigate complaints. He apologized to the Plaintiff that her complaint was overlooked.

172.    The Defendant Crystal Rodriguez Dabney Esq. Did breach her fiduciary duty to the Plaintiff for personal gain.

173.    The Defendant CRYSTAL RODRIGUEZ DABNEY ESQ. has a history of breaching her Fiduciary Duty. A relative entrusted her with POA while he was incarcerated. In a complaint filed in Erie County Supreme Court on February 28, 2017 David Gonzalez states the Defendant filed a Fraudulent Conveyance of 139 Grant St. Buffalo, NY 14213. He states he entrusted her with 3 of his properties and she transferred 2 of the titles to her own name without his knowledge or consent. He provided proof where he found out about the first property and was able to obtain it back after two years. (Gonzalez v. Rodriguez;802789/2017)

**3. The Defendant Erie County District Attorney John Flynn Esq.**

174.     There was an implied contract between the Plaintiff as a victim of multiple crimes that occurred in Erie County and the Erie County District Attorney whose duty is to prosecute the Criminals that commit the crimes within Erie County. The Plaintiff reached out to the Erie County District Attorneys Office during 2020-2021 asking for them to review her case and hold The Defendants BUFFALO POLICE Officers JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ accountable for what they did to her.

175.     The Assistant DA said they would meet with JOHN FLYNN ESQ. as he made the final decisions. When the attorney followed back up The Plaintiff was told they were not going to be able to prosecute the involved officers, but she could try filling a civil suit.

176.     The Plaintiff asserts that in cases of civil rights violations civil litigation should have no baring if officers are investigated or held criminally liable.

177.     The Defendant JOHN FLYNN ESQ. did violate his Fiduciary by not investigating or charging the Defendants Officers JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ with criminal civil rights violations.

**Sixth Cause of Action for Violation of Legal Malpractice- 15 NY Prac. New York Law of Torts §§ 13:31-13:38 Attorney malpractice under 28 U.S. Code § 1332 Diversity Jurisdiction by Defendant Phillip Dabney Jr. Esq.**

**Legal Malpractice**

**1.  The Defendant Phillip Dabney Jr. Esq.**

178.     New York substantive law is controlling in this diversity action. Under New York law, a plaintiff must prove the following elements to establish a cause of action based on Legal Malpractice:    1. Negligence: The attorney breached their duty of care; 2. Proximate cause: The

attorney's negligence caused the plaintiff's injury; 3. Damages: The injury caused actual damages.

179.    The Plaintiff has shown where the contract existed, how the Defendant breached the contract, she has shown causation that the Defendant purposely missed a deadline for self-gain through fraudulent misrepresentation.

180.    Generally, New York courts have rejected claims by plaintiffs in legal malpractice actions against their former attorneys arising out of representation in civil proceedings. See, e.g. Dirito v. Stanley, 203 AD2d 903 [4 Dept. 1994]; Wolkstein v. Morgenstern, 275 AD2d 635 [1 Dept. 2000]. As held in various cases, there can be no recovery, other than for pecuniary losses, for emotional or psychological injury in a legal malpractice action.

181.    Although previous caselaw has held that Plaintiffs damages are limited to "actual pecuniary loss sustained as the direct result of the wrong"; (Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421, citing Reno v. Bull, 226 N.Y. 546, 553) The Plaintiff believes in this instance her damages should include non-pecuniary losses as they can be measured by the outcome of her 1983 Civil Rights claim in this action.

182.    The Plaintiff asserts the Defendant PHILLIP DABNEY JR. ESQ. fraudulently missed the deadline to file action for her civil suit. He fraudulently misrepresented the details of her case after missing the deadline. He conspired to hide federal crimes and work for the Defendant in the Plaintiff's case The CITY OF BUFFALO.

183.    If the court finds The Defendant(s) The CITY OF BUFFALO, The Buffalo Police, JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ guilty of any of the named actions they are

accused of committing in the Plaintiff's 1983 civil rights action and she cannot recover due to the statute of limitations passing; the Plaintiff is asking the court to order the relief be paid by the Defendant PHILLIP DABNEY JR. ESQ. as damages for Breach of contract and Legal Malpractice.

184.    If the Defendant PHILLIP DABNEY JR. ESQ. would not have fraudulently deceived the Plaintiff and committed legal malpractice by never filing an action by the deadline, she would have collected relief. The conduct of Defendants CITY OF BUFFALO conspiring with PHILLIP DABNEY JR. ESQ. to cover up federal civil rights violations and stop the Plaintiff from receiving justice or relief was outrageous in character and goes beyond bounds of decency.

185.    The Plaintiff asserts that the Breach of Contract and Legal Malpractice in this case were two separate actions and wrongs. The first action the Breach of Contract took place on January 31, 2018, when the Defendant PHILLIP DABNEY JR. ESQ. missed the deadline. The second action of Legal Malpractice took place when the Defendant fraudulently misled the Plaintiff about the details of her case through multiple texts and phones calls during March, April, May 2018.

186.    A cause of action for negligent infliction of emotional distress must be based on allegations of conduct "so extreme in degree and outrageous in character as to go beyond all possible bounds  of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community" (Hernandez v. City of New York, 255 A.D.2d 202,quoting Naturman v. Crain Communications, 216 A.D.2d 150). "Whether the alleged conduct is outrageous is, in the first instance, a matter for the court to decide" (Rocco v. Town of Smithtown, 229 A.D.2d 1034, appeal dismissed 88 N.Y.2d 1065). The Defendant's acts were extreme and outrageous

187.    The Plaintiff would like to recover damages under NY CPLR 214 (6): An action to recover damages for malpractice.

**Sixth Cause of Action for Violation of 18 U.S. Code § 242 the Deprivation of rights under color of law by the Defendants The City of Buffalo Police Officers Joseph Mullen, Shawn Mccab, Jospeh Paszkiewicz, Officer Central Booking Jane Doe, Mayor Byron Brown, Police Commissioners Daniel Derenda ,Byron Lockwood, John Flynn Esq., Christopher Scalon, Phillip Dabney Jr. Esq., and Crystal Rodriguez Dabney Esq.**

**VI. Deprivation of Rights**

188.    Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

189.    Defendants JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ acts violated the Plaintiff's constitutional violations resulted in unlawful search/seizure, bodily injury, unlawful imprisonment, kidnapping and sexual abuse.  The Defendants all deprived the Plaintiff of her constitutional rights.

190.    Under the FTCA, 28 U.S.C. §§ 2671-2680, individuals who are injured or whose property is damaged by the wrongful or negligent act of a federal employee acting within his or her official duties may file a claim with the government for reimbursement for that injury or damage. To state a valid claim, the claimant must demonstrate that:

> 1. The or she was injured, or his or her property was damaged by a federal government employee; 2. The employee was acting within the scope of his or her official duties; 3. The employee was acting negligently or wrongfully; and the negligent or wrongful act proximately caused the injury or damage of which he or she complains.

191.    Defendants Officers JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ did commit bodily injury to the Plaintiff. They were acting within the scope of their official duties as CITY OF BUFFALO Police Officers. All Defendants Officers were acting negligently and wrong and did cause bodily injury and sexual abuse to the Plaintiff. These acts caused emotional distress, physical pain, and mental anguish.

**Seventh Cause of Action for violation of the Plaintiff's Fourth Amendment Right to be protected against illegal searches and seizures of her residence and persons as per 42 U.S.C §1983 per Monell v. Department of Social Services, 436 U.S. 658 (1978) against Defendants Christopher Scalon, Crytal Rodriguez Dabney Esq., Byron Brown, Byron Lockwood, Daniel Derenda, John Flynn Esq., the City of Buffalo, and Erie County.**

**VII. Protection From Illegal Search & Seizure (Monell)**

192.    Plaintiff repeats and reiterates each and every foregoing allegation of this Amended Complaint with full force and effect as if set forth at length in this cause of action.

To establish a municipal liability claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 140 (2d Cir. 2010) (quoting Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)).

193.     A Plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates [emphasis added]. Lacovangelo v. Corr. Med. Care, Inc., 624 F. App'x 10, 13-14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); Carter v. Inc. Vill. of Ocean Beach, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions).).

194.     Relating to widespread and pervasive practices and using logical inferences to impute knowledge onto policymakers, circumstantial evidence can be sufficient to support an inference that . . . a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)).

195.     The Plaintiff asserts that Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) controls here. In Brown, the Supreme Court recounted its decision in Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) and its progeny concerning whether a municipality can be held liable under 42 U.S.C. § 1983. The Court stated that "in enacting § 1983, Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the `moving force' behind the plaintiff's deprivation of federal rights."

196.     Brown, 520 U.S. at ___, 117 S. Ct. at 1386 (citing Monell, 436 U.S. at 694, 98 S.Ct. 2018). We have required a plaintiff seeking to impose liability on a municipality under § 1983 to

identify a municipal `policy' or `custom' that caused the plaintiff's injury." Id. (citing Monell, 436 U.S. at 694, 98 S. Ct. 2018; Pembaur v. Cincinnati, 475 U.S. 469, 106 S. Ct. 1292, 1298-99, 89 L. Ed. 2d 452 (1986); City of Canton v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

197.    Plaintiff acknowledges that the Defendant City of Buffalo's written policy for Central Booking is in accordance with Weber, but argues that its written policy was ignored and a de facto policy existed in which individuals were routinely subjected to strip- and/or body-cavity searches without justification. Plaintiff contends that she has evidence of five incidents, over years where the City allegedly conducted unconstitutional strip- and body-cavity searches of arrestees and detainees. Plaintiff also contends those numbers are inaccurate as the CITY OF BUFFALO, Internal Affairs, and the Citizens Rights Review Board, did conspire to cover up unlawful searches and seizures. Based on these five incidents, and the cover up of her own claim The Plaintiff argues that the strip-search and body-cavity search that she was subjected to were not random in nature, but rather a "policy" or "custom" within the meaning of Brown and Monell.

198.    The first incident that plaintiff alleges occurred on September 11, 1988, when Kyle Jackson claimed that he was unlawfully kicked, punched, and left to spend the night naked in the police lockup after he was arrested on disorderly conduct charges. (Buffalo News Article 10/15/88 (https://buffalonews.com/news/naked-prisoner-sparks-questions-on-police-strip-searching/article_9f358f6a-3c6b-56b0-908a-c754439dbf32.html)

199.    The second incident occurred on September 21, 1988, when Kenneth Lynch claimed that he was unlawfully arrested and strip-searched for a misdemeanor offense after he had asked two officers for their badge numbers when they refused to take action about a car that was illegally parked. Lynch filed a lawsuit in New York State Supreme Court on September 20, 1989 for 1.5 million, which eventually settled. Without comment, State Supreme Court Justice Jerome

C. Gorski ruled that the strip search of Kenneth Lynch, 38, following his Sept. 21, 1988, arrest was unconstitutional and violated a Police Department order restricting such searches. https://buffalonews.com/article_adb941f9-5b00-5140-8390-8b96638fdbb2.html

200.   The Third incident occurred on September 15, 1994, when Gretchen Joy Vinson claimed that her constitutional rights were violated when she was strip-searched without probable cause after she was arrested for failure to pay a $1.10 metro fare. On March 7, 1995, Vinson filed suit, (Vinson v. City of Buffalo, et al., 95-CV-156, (W.D.NY)). This case has subsequently settled.

201.   The Fourth incident occurred on June 17, 2018, when Andre Wise claimed that his constitutional rights were violated when he was stopped for a traffic stop without probable cause and was illegally detained, searched, malicious prosecution, and unlawful deprivation of property (due to the theft of his money), and a claim for municipal liability for the unlawful search. The Defendants Officer SHAWN MCCABE, CITY OF BUFFALO AND POLICE COMMISIONOR BYRON LOCKWOOD were Defendants in this lawsuit, which subsequently settled out. (Wise v. City of Buffalo, 1:21-cv-00749, (W.D.N.Y.))

202.   These example of cases of unconstitutional strip-searches to which she was subjected was not random in nature, but rather a "policy" or "custom" within the meaning of Brown and Monell. The plaintiff alleges four incidents in addition to her own for a total of five to establish that the unconstitutional strip-search and seizure to which she was subjected was not random in nature, but rather a "policy" or "custom" within the meaning of Brown and Monell.

203.   The Plaintiff believes that in Buffalo, NY the action of filing a civil claim does not constitute if unlawful strip searches have been conducted. The numbers are inaccurate due to

the concealment and failure to investigate ALL the complaints made to investigatory bodies such as Internal Affairs and the Commission of Citizens Rights & Community Relations.

204.    The Plaintiff's claim falls within the meaning of Brown or Monell as she claims the 4 prior cases, as well as many more unconstitutional searches for misdemeanor arrests that have been done but not reported because there is no proper oversight for the investigatory bodies that accept resident complaints.

205.    The Plaintiff asserts that the numbers reported of unlawful searches and seizures are not accurate in that the true number has been concealed by The CITY OF BUFFALO by conspiring to cover up reports of these crimes to Internal Affairs and CCRCR.

206.    The CITY OF BUFFALO Commission of Citizens Rights & Community Relations is severely flawed. Instead of helping protect resident's rights, the executive director was working to conceal and suppress reports of wrongdoing and Federal Civil Rights Violations.

### City of Buffalo Internal Affairs

207.    The Plaintiff submitted her compliant to Internal Affairs and in it describes the illegal strip search with photos to internal affairs. The portion of her report regarding the unlawful strip search was never investigated properly or reported.

208.    The Plaintiff submitted her complaint to Internal Affairs and it describes the unlawful entry into her home and unlawful detainment for alleged misdemeanors. The City of Buffalo Police Commissioner DANIEL DERENDA decided what the Defendants Officers JOSEPH MULLEN,

SHAWN MCCABE, JOSEPH PASZKIEWICZ did was condoned and accepted; even they admitted to unlawful entry and an illegal body search for an alleged misdemeanors.

209.    After the repeal of 50-A the Plaintiff was able to obtain all the documents to her Internal Affairs file. The Plaintiff emailed Deputy Commissioner Barbara Lark (December 2021- July 2022) regarding the handling of her complaint. Deputy Commissioner Lark met with the Plaintiff at her office about the decision of City of Buffalo Police Commissioner DANIEL DERENDA. Specifically regarding The Plaintiff's unlawful body search not being properly investigated. Deputy Commissioner Lark agreed that the decision of the compliant was not within the law as her civil rights had been violated. She said the Plaintiff would have to speak to the new Police Commissioner BYRON LOCKWOOD.

210.    The Plaintiff also emailed Investigator Robert Rosenswie (February 2022- July 2022) as he appeared to be an investigator on the original 2015 complaint and in 2022 was now the head of Internal Affairs. The Plaintiff inquired why the portion of her compliant regarding being unlawfully strip searched and forcibly touched by Officers was never investigated. Investigator Robert Rosenswie stated the final decision of all violations the Plaintiff made was made by Buffalo Police Commissioner DANIEL DERENDA.

211.    During July, 2022, after speaking to Deputy Lark and Investigator Robert Rosenswie, The Plaintiff requested a meeting with the Defendant City of Buffalo Commissioner BYRON LOCKWOOD regarding the way her internal affairs complaint from 2015 was handled and the criminal violations the Officers committed. Defendant BYRON LOCKWOOD said he did review her file but could not investigate an internal affairs complaint that the previous the previous Commissioner Defendant DANIEL DERENDA had already decided on.

212.    Defendant BYRON LOCKWOOD condoned the criminal behavior of civil rights violations by seeing they occurred and not properly investigating and reporting the Officers. Ironically The Defendant Officer SHAWN MCCABE was named as CO-Defendant with Defendant Police Commissioner BYRON LOCKWOOD for another 1983 Civil Rights violations claim by a City of Buffalo resident. (Wise v. City of Buffalo, 1:21-cv-00749, (W.D.N.Y.) This lawsuit was filed months prior to Lockwood meeting with the Plaintiff regarding the same officer.

### City of Buffalo Commission of Citizens Rights & Community Relations (CCRCR)

213.    Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. was the Executive Director of THE CITY OF BUFFALO Commission of Citizens Rights & Community Relations (CCRCR) during 2015 when the Plaintiff made an Internal Affairs complaint regarding her January 31, 2015 incident of assault and false imprisonment. At the time the position required a law degree in order to investigate civil rights violations, which The Defendant Rodriguez- Dabney Esq. met that requirement to accept the position as executive director.

214.    **The Charter for the City of Buffalo (Section 18:20-22)-Commission of Citizens Rights & Community Relations- 18-22: Duties and Powers the duties and powers of the commission shall be to:**

*"a) Develop programs in cooperation with civic, community and civil rights organizations and state and federal agencies, to improve relations among the city's racial, religious, ethnic, and other communities and build an inclusive sense of community throughout the city.*

*b) Investigate and recommend action in response to incidents, patterns and causes of discrimination on grounds of race, ethnic background, cultural background, language, religion, gender, sexual orientation, gender identity and expression, disability, nationality, and age.*

*c) Examine, assess, and recommend action on issues of equal opportunity and respect for cultural diversity within city government and its services and programs.*

*d) Assist citizens with filing and pursuing complaints of police misconduct.*

*e) Review, monitor, report on, and recommend to the appropriate city officials action concerning the police departments (i) initial and continuing training program in community relations and respect for citizens' rights; and (ii) standards and procedures for investigating, acting upon, and*

resolving complaints of police misconduct. Upon completion of the police department's investigation of a complaint of police misconduct, the commission may review the police department's file of the investigation;

f) Submit at least once each year, and as requested by the Mayor or Common Council, a report on: (i) its activities (ii) the state of community relations in the City (iii) the state of equal opportunity and respect for cultural diversity within city government and in its services and programs; (iv) the state of the police department's initial and ongoing training programs in community relations and respect for citizens' rights and standards and procedures for investigating and acting upon complaints of police misconducts; and (v) significant issues that have arisen concerning any of the foregoing matters;

g) Hold public and private hearings and take testimony under oath, and to issue subpoenas requiring the attendance of person and the production of books, papers, and other things.

h) Request the cooperation of other agencies of city government; and

i) Within the amounts appropriated by the common council or otherwise made available by grants, expend, contract for, or dire."

## HISTORICAL PERSPECTIVES CCRCR

215.    Police and Non-Police Related Complaints Based on a review of available records, CCRCR has had 527 complaints filed since 2001.

| YEAR | TOTAL |
|------|-------|
| 2001-2002 | 49 |
| 2002-2003 | 50 |
| 2003-2004 | 35 |
| 2004-2005 | 20 |
| 2005-2006 | 27 |
| 2006-2007 | 37 |
| 2007-2008 | 54 |
| 2008-2009 | 45 |
| 2009-2010 | 15 |
| 2010-2011 | 29 |
| 2011-2012 | 12 |
| 2012-2013 | 31 |
| 2013-2014 | 15 |
| 2014-2015 | 12 |
| 2015-2016 | 3 |
| 2016-2017 | 27 |
| 2017-2018 | 6 |
| 2018-2019 | 26 |
| 2019-2020 | 34 |

216.    During the 7 Years (2001-2007) prior to the Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ.'s arrival the Commission took a total of 272 claims. That's an average of 39 Claims per year.

217.    During the next 8 years (2008-2016) while the Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. was the paid director the Commission took a total of 162 claims. That's an average of 20 claims per year. The number of complaints reviewed decreased by 50% once the Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. became the Director.

218.    The Plaintiff wrote an internal affairs report regarding numerous civil rights violations endured by herself and her family at the hands of the Buffalo Police on January 31, 2015.  The Defendant, CRYSTAL RODRIGUEZ-DABNEY ESQ. nor anyone from her organization did not reach out to the Plaintiff to discuss her Internal Affairs Complaint against Defendants, Officers JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ.

219.    The year (2015) the Plaintiff made her Internal affairs complaint the Commission's records show they reviewed a total of 3 complaints, the lowest amounts of complaints ever taken.

220.    The following year after the drastic decline (2016) The Defendant, CRYSTAL RODRIGUEZ-DABNEY ESQ. then was appointed to the City of Buffalo Chief Diversity Officer, as part of MAYOR BYRON BROWN's Buffalo Opportunity Agenda.

### City of Buffalo Councilman Christopher Scalon

221.    After the repeal of 50-A on June 12, 2020, the Plaintiff was able to receive paperwork showing the civil rights violations that occurred to her by the Buffalo Police. After reading the

City of Buffalo Charter and seeing the CITY OF BUFFALO Common Council has the power to investigate internal affairs complaints and civil rights violations against residents, the Plaintiff requested a meeting with her then Councilman CHRISTOPHER SCALON.

222.    On July 20, 2020 she was able to meet with Defendant Christopher Scalon through teams for approx 1.5 hours. They met regarding The Plaintiff's concerns about civil rights violations of residents by the Buffalo Police, particularlly what happened to her. The Plaintiff asked the Defendant Christopher Scalon if he could investigate the violations that occured. Defendant CHRISTOPHER SCALON said he had a good relationship with the Buffalo Police and he could take a look into the Plaintiff's concerns.  He said he was a part of a Police Oversight Committee through the Common Council. He asked what the names of the Officers were and said he would get back to the Plaintiff.

223.    The Defendant CHRISTOPHER SCALON never followed back with the Plaintiff or addressed any of the concerns the Plaintiff reported to him at any of the recorded CITY OF BUFFALO Common Council Police Oversite Committee meetings thereafter.

**Erie County District Attorney John Flynn**

224.    The Plaintiff reached out to Defendant JOHN FLYNN Esq. as the District Attorney during 2020-2021 asking for them to review her case and hold the Defendants Officers JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ accountable for what they did to her.

225.    The Defendant JOHN FLYNN ESQ.'s office said after speaking with him he would not prosecute the officers and suggested the Plaintiff filed a civil suit. The Erie County DA's office did not provide an explanation as to why.

**Monell Conclusion**

226.    Defendants The CITY OF BUFFALO, MAYOR BYRON BROWN, CRYSTAL RODRIGUEZ-DABNEY ESQ., CITY OF BUFFALO Police Commissioners DANIEL DERENDA, BYRON LOCKWOOD, Councilman CHRISTOPHER SCALON and Erie County District Attorney JOHN FLYNN esq. are liable for the illegal search, seizure and strip search conducted against the Plaintiff, and all resultant damages, under the Monell Doctrine.

227.    In this instance, unlawful search and seizure without the requisite reasonable suspicion that an individual is armed or has drugs are a pattern or practice of the City of Buffalo Police Department and the City of Buffalo.

228.    In New York, Under Payton v. New York, 445 U.S. 573 (1980), the police may not enter a home to make a warrantless arrest; a warrant to arrest is necessary. If, however, the defendant is in the doorway when the police approach and he flees into the house, then the police may follow.

229.    Yet, in this instance the Plaintiff was not in the doorway, The Plaintiff's Mother and 2 year old daughter were at the first door and Entrance way that leads into the Plaintiff's hallway of her residence. The Plaintiff was standing inside her living room at the second door leading into her home. She did not flee into the house as she was already inside her house in the living room and merely closed the second door into her residence.

230.    In New York, it is established that pat down or protective searches are only reasonable when an Officer can reasonably suspect that a suspect is armed and therefore poses a risk to officer safety. People v. Solivan, 156 A.D. 3d 1434 (Fourth Dept., 2017).

231.    (Wise v. City of Buffalo et al: 1:2021cv00749) "Yet, in this instance and in a persistent pattern or practice that apparently is taught in the academy, pat downs are conducted at ANY

level of a Buffalo police investigation…for any offense… including a mere traffic stop." At a suppression hearing held on September 18, 2018, officer Defendant McDonald admitted that he and officer Defendant SHAWN MCCABE conducted a pat down search of the Plaintiff "for Officer safety," despite merely suspecting said Plaintiff of simple vehicle and traffic law infractions."

232.    The strip search of the Plaintiff was not an anomaly… unlawful search and seizures, as well as strip searches are conducted for misdemeanors, even traffic stops as a matter of policy and procedure by the Buffalo Police Department and are in fact endorsed by MAYOR BYRON BROWN, City of Buffalo, Police Commissioners DANIEL DERENDA and BYRON LOCKWOOD.

233.    On January, 31 2015, at Buffalo Central Booking Buffalo Police Officers JOSEPH MULLEN and SHAWN MCCABE did use verbal force to make the plaintiff remove an article of her clothing that exposed her bare breasts for a misdemeanor arrest. They then instructed Central Booking Officer Jane Doe to conduct an unlawful strip search by forcibly touching the plaintiff around her exposed breasts. A total of 4 males Officers were present, all watching, laughing and smiling.  Calhoun subsequently filed an internal affairs complaint as a result thereof.

234.    During the investigation, The Defendant SHAWN MCCABE admitted that officers used verbal abuse for the Plaintiff to comply with the illegal strip search in central booking on his statement. *(exhibit #15 Signed Sworn interviews)*

Officer SHAWN MCCABE Sworn Internal Affairs Interview (March 4, 2015)

*"He States that he was behind curtain during search of Calhoun and heard her being uncooperative with CBA. He States that no force was used only verbal."*

235.    During the investigation, JOSEPH MULLEN and SHAWN MCCABE admitted that the Plaintiff closed the door to her residence.

Officer JOESPH MULLEN sworn Internal Affairs interview: (March 4, 2015)

**"Interviewed PO J MULLEN he states he was on porch with Calhoun and had conversation with her. He states that he advised her that she go the easy way or the hard way and then Calhoun slammed the door on him. At this time he grabbed her arm and Morgan Eaton grabbed his arm. He states that he let go of Calhoun and grabbed Morgan Eaton and told him to stop that he was under arrest."**

Officer SHAWN MCCABE sworn Internal Affairs Interview:

**"He State that he observed Calhoun Slam door and Morgan Eaton Grab Mullen's Arm."**

236.    Unless the Defendant JOSPESH MULLEN can reach through closed doors, he did unlawfully enter the Plaintiff's home by opening her door.

237.    The CITY OF BUFFALO Police Department's Internal Affairs investigation that Defendant DANIEL DERENDA found that JOSEPH MULLEN, SHAWN MCCABE AND JOESPH PASZKIEWICZ acted appropriately for a misdemeanor arrest by entering The Plaintiff's home unlawfully and causing bodily injury due to excessive force. Per the IA investigation obtained by the Plaintiff, Defendant DANIEL DERENDA purposefully opted not to investigate the unlawful body/strip search in Central Booking shows an endorsement of the actions, at the very least, of the policymakers for pervasive, unlawful, and invasive strip searches, aka body searches; as well as unlawful search and seizures.

238.    As such, said municipal Defendants endorse the Officers' practice of always executing protective unlawful search and seizures, regardless of whether the legal standard to justify such an intrusion is met.

239.    Such unofficial practice as endorsed by Defendants MAYOR BYRON BROWN, DANIEL DERENDA and BYRON LOCKWOOD was the driving force behind the Constitutional deprivation as suffered by Plaintiff Calhoun. The above-referenced Calhoun investigation, and the results thereof, establish that: The CITY OF BUFFALO and Defendants MAYOR BYRON BROWN, DANIEL

DERENDA and BYRON LOCKWOOD, in their capacity as Commissioners of the Buffalo Police Department, either instructed JOSEPH MULLEN, SHAWN MCCABE AND JOESPH PASZKIEWICZ, and all other Buffalo Police Department police officers, to conduct unlawful searches and seizures of any individuals who lived on the East Side of Buffalo in the Bailey Avenue area. Or, at the very least, the City and its' policymakers Exhibit "deliberate indifference" to this unlawful conduct, as evinced by their tacit endorsement of such practice, and that such approval from the policy makers was the driving force of the violation of Plaintiff's Fourth Amendment rights to be free from unlawful searches on the day in question.

240.    The unconstitutional body search of the Plaintiff, detainment, and entry into her home occurred as a result of the CITY OF BUFFALO Police's Departments policy of condoning illegal search and seizure of individuals detained on the East-Side of Buffalo, living off of Bailey Avenue.  MAYOR BYRON BROWN and Buffalo City Police Commissioners DANIEL DERENDA and BYRON LOCKWOOD authorized this policy or, at the very least, exhibited "deliberate indifference" to the constitutional violation of Plaintiff's Fourth Amendment rights, caused by this policy. As such, both the CITY OF BUFFALO, MAYOR BYRON BROWN, and Police Commissioners DANIEL DERENDA and BYRON LOCKWOOD are liable for the unlawful search and seizure of the Plaintiff, based on the Monell Doctrine. Franks v. City of New York, 2015 U.S. Lexis 72563 (EDNY 2015); Smith v. City of New York, 290 F. Supp. 2d 317, 321 (EDNY 2003); Monell v. Dept. of Soc. Svc., 436 U.S. 658 (1978).

241.    The Plaintiff asserts the Officer's in in her case are all stationed at The City of Buffalo Police District E on the East side of Buffalo. They all have a history of misconduct complaints: (Plaintiff omitted the NUMEROUS vehicle accident complaints for all 3 Defendants Officers, and 1 LT Cyrek) All below complaints were submitted to the City of Buffalo Internal Affairs department. All complaints below are alleged by residents in the City of Buffalo/Erie County:

1. **The Defendant Officer Joseph Mullen:**
2/22/2012: Excessive Force – Officer involved in foot chase, complainant says when he caught him he punched and kicked him in the head and face
2/9/2015: Excessive Force-Complainant says officer dragged her down the stairs

2. **The Defendant Officer Shawn Mccabe**
9/28/2015: Vehicle Pursuit : Procedures
3/10/2016 : Conduct-Officer wrote the words "crack head" and a stick figure on the back of complainant's car while she was arrested.
6/28/2017: Conduct –Rude
3/7/2018: Procedures: Unlawful entry into residents home/violating civil rights
10/26/2018: Procedures: Unlawful traffic stop/racial profiling
6/17/2021: Wise v. City of Buffalo et al - Cause of Action: 28 U.S.C. § 1983 (Settled)
(Civil Action includes Defendants Shawn Mccabe, Police Commissioner BYRON LOCKWOOD & City of Buffalo)

3. **The Defendant Joseph Paszkiewicz**
1/3/2009: Searched a female without an officer present.

4. **Lieutenant Mark Cyrek**
**The Plaintiff pulled an at random Lieutenant's discipline report at the BUFFALO POLICE E District to show a pattern of misconduct:**

8/18/2010: Procedure: Officer changed the place of confinement without the required permission of the Police Commissioner
8/5/2011: Excessive Force- Grabbed complainants' son by the neck lifting him off the ground
6/11/2012: Conduct: Officer acted rudely, yelling, swearing, searched female suspect in a manner that exposed her breasts to the public.
8/29/2016: Officer filing false criminal charges.
1/2/2017: Officer stops female resident in the middle of the night while she is driving and gets into her vehicle and instructs her to drive because he was looking for a dog.
4/17/2017: Officer Cyrek and 4 other police officers physically assaulted a female suspect where she sustained a busted lip and facial pain. Complainant subjected to racial slurs by PO Cyrek.
4/24/2019: Officer illegally searched female suspects vehicle, spoke to his supervisor who was also rude and unprofessional.
9/22/2021: Officer is continuously following and harassing complainant, he has been subjected to rude/profane language and ethnic slurs.
10/19/2022: Complainant reports LT & PO's of E-Dist are targeting and harassing her
6/1/2023: Complainant reports ongoing harassment by LT Cyrek and states she believes its because she and majority of her customers are black)
9/24/23: Excessive Force: Taser

242.    LT Cyrek who is one of the overseers of the officers in the E is breaking civil rights violations himself, it is clear by the complaints he endorses other officers to do the same. Also shown through resident complaints is his racial biased towards residents. There is a pattern of the CITY OF BUFFALO Police rewarding and endorsing misconduct as the more complaints of misconduct an Officer receives the higher they climb in the ranks. Officers who have been guilty of misconduct in high profile cases resulting in deaths are also promoted instead of held accountable for their actions.

243.    Plaintiff asserts her constitutional rights were violated by the Buffalo Police because she was black and living on the Eastside of Buffalo, specifically off of Bailey Avenue, which was a targeted area by the Buffalo Police. Without the Repeal of 50-A in 2020, the Plaintiff would not have been able to prove her case due to the concealment and collusion of the Defendants. The Plaintiff's case is proof that full transparency of police records is needed to the public.

244.    Plaintiff asserts that it is unconstitutional to conduct strip- and/or body-cavity searches of arrestees charged with misdemeanor violations when there is no reasonable suspicion that weapons or other contraband will be found.

245.    The Plaintiff asserts that other misdemeanor arrestees were subjected to illegal strip- and body-cavity searches. She alleges that the City failed to investigate these illegal searches, conspired with Internal Affairs and The Commission of Citizens Rights & Community Relations to conceal complaints. It had become customary, in violation of written policy. Plaintiff maintains that this customary policy resulted in deliberate indifference to the right of detainees to be free from unreasonable searches. She asserts that, as a result of defendants' acts and/or omissions, he has suffered severe emotional distress, anxiety and depression. She became emotionally and socially withdrawn, suffered appetite loss, PSTD, and has suffered sleep disorders.

246.    The Plaintiff alleges the CITY OF BUFFALO, Internal Affairs, and the Commission of Citizens Rights & Community Relations, the South Buffalo Councilman, and the Erie County District Attorney were/is knowingly concealing unlawful searches in Central booking, which is a clear "policy, or "custom," that has been going on for decades, violating the Constitutional Rights of residents.

247.    The Defendants MAYOR BYRON BROWN, CRYSTAL RODRIGUEZ-DABNEY ESQ., JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ, DANIEL DERENDA and BYRON LOCKWOOD, CHRISTOPHER SCALON, AND JOHN FLYNN ESQ. are guilty of Official Misconduct.  New York Penal Law § 195.00 is a criminal statute that prohibits official misconduct. This offense occurs when a public servant, such as a police officer, judge, or government employee, uses their position to obtain a personal benefit or to harm someone else. Specifically, the law states that a public servant is guilty of official misconduct when they commit an act related to their official duties, which constitutes an unauthorized exercise of their official functions or is in violation of their official duty, with the intent to obtain a benefit for themselves or to cause harm to another person.

**Eighth Cause of Action for Violation of 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights & 18 U.S. Code § 371  Conspiracy to commit offense or to defraud United States by the Defendants The City of Buffalo Police Officers Joseph Mullen, Shawn Mccab, Jospeh Paszkiewicz, Officer Central Booking Jane Doe, Abigail Rodriguez, Mayor Byron Brown, Police Commissioners Daniel Derenda ,Byron Lockwood, Councilman Christoper Scalon, Erie County DA John Flynn Esq., Steven Earnhart, Phillip Dabney Jr. Esq, and CCRCR Executive Director Crystal Rodriguez Dabney Esq.**

**VIII. Conspiracy**

248.    42 U.S. Code § 1985 - Conspiracy to interfere with civil rights: Obstructing justice; intimidating party, witness, or juror. If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and

truthfully, or to injure such party or witness in his person or property on account of his having

so attended or testified, or to influence the verdict, presentment, or indictment of any grand or

petit juror in any such court, or if two or more persons conspire for the purpose of impeding,

hindering, obstructing, or defeating, in any manner, the due course of justice in any State or

Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or

his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of

persons, to the equal protection of the laws;

249.      Depriving persons of rights or privileges-If two or more persons in any State or

Territory conspire or go in disguise on the highway or on the premises of another, for the

purpose of depriving, either directly or indirectly, any person or class of persons of the equal

protection of the laws, or of equal privileges and immunities under the laws; or for the purpose

of preventing or hindering the constituted authorities of any State or Territory from giving or

securing to all persons within such State or Territory the equal protection of the laws;

250.      In any case of conspiracy set forth in this section, if one or more persons engaged

therein do, or cause to be done, any act in furtherance of the object of such conspiracy,

whereby another is injured in his person or property, or deprived of having and exercising any

right or privilege of a citizen of the United States, the party so injured or deprived may have an

action for the recovery of damages occasioned by such injury or deprivation, against any one or

more of the conspirators. "or persons" having knowledge [that a conspiracy to violate civil rights

was afoot], and having power to prevent or aid in preventing the same," who did not attempt to

stop the same, liable to any person injured by the conspiracy. The amendment in this form was

adopted by both Houses of Congress, and is now codified as 42 U. S. C. §1986.

251.      18 U.S. Code § 371  Conspiracy to commit offense or to defraud United States:

Conspiracy to Defraud the United States: If two or more persons conspire either to commit any

offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

252.     Proving a Civil Conspiracy- A person must prove the elements to succeed in a civil conspiracy case. According to the Restatement of Torts, the elements of a civil conspiracy are: Agreement: The defendant made an express agreement with another to commit a wrong. Overt Act in Furtherance: A tortious or unlawful act results in the furtherance of the conspiracy. Economic Loss: The plaintiff suffered economic loss as a result.

253.     The Defendants CITY OF BUFFALO police commissioners DANIEL DERENDA, BYRON LOCKWOOD, CCRCR Executive Director CRYSTAL RODRIGUEZ-DABNEY ESQ., and ERIE COUNTY Assistant District Attorney STEVEN EARNHART did obstruct justice and conspired to Defraud the United States by concealing reports of CITY OF BUFFALO Residents and potential claims of civil rights violations and crimes committed by Defendant Officers JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ, as well as other Buffalo Police Officers.

254.     The Defendant Councilman CHRISTOPHER SCALON did conspire with the CITY OF BUFFALO and the Buffalo Police to cover up Federal Civil Rights crimes against residents. Per the CITY OF BUFFALO Charter, it is his responsibility to investigate the civil rights violations and internal affairs complaints made by residents in his district. The Plaintiff made a request for him to investigate as a South Buffalo resident at that time, he chose to conceal the information he received.

255.    The Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. did conspire with the Plaintiff's attorney Defendant PHILLIP DABNEY JR. ESQ.. through the Commission of Citizens Rights & Community Relations to obstruct Justice by not investigating the Plaintiff's Internal Affair's complaint filed February 2015 regarding Civil Rights violations.

256.    The Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. stated in an article she met with Internal Affairs regarding complaints made by residents regularly. "…she said the police always gave her the documents she requested, such as commissioner's notes on the officer's discipline, and she had regular meetings with Internal Affairs to review complaints." (Investigative Post, 2/15/2017, Scant oversight of The Buffalo Police)

257.    The Plaintiff's attorney The Defendant PHILLIP DABNEY JR. ESQ. conspire with the Defendant The CITY OF BUFFALO, to miss the deadline of the Plaintiff's claim against the CITY OF BUFFALO. The Defendant PHILLIP DABNEY JR. ESQ. did take a job with the City of Buffalo months after missing the deadline.

258.    The Defendant ABIGAIL RODRIGUEZ did conspire to coverup the bodily injury inflicted by the Defendant Officers JOSEPH MULLEN by purposely omitting the Plaintiff's injuries from the Central Booking report when the Plaintiff disclosed her injuries. The Defendant ABIGAIL RODRIGUEZ did purposely omit the tank top that the Plaintiff was unlawfully made to remove into items that was collected from the Plaintiff on her Central booking form.

259.    STEVEN EARNHART did conspire to conceal and coverup Federal Crimes committed by Defendants JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ by not handing over the evidence to the court of an unlawful arrest during the Plaintiff's criminal Trial. Defendant EARNHART also had information of these crimes and did nothing to prosecute them.

260.       CITY OF BUFFALO and MAYOR BYRON BROWN did conspire, create and instruct Buffalo Police Officers patrolling the Plaintiff's residential area that it was approved to violate the civil rights of those particular residents in attempts of finding guns and drugs.

*"We work for the mayor. We're Strike Force. We can do whatever the fuck we want to do." Courts records show Strike Force, Housing Unit conduct illegal searches, sometimes submit dubious testimony." (Investigative post, Sep 20, 2017, Buffalo Police Who Cross the Line)*

## VIII. A) U.S.C. § 2, Aiding and Abetting

261.     New York substantive law is controlling in this diversity action. Under New York law, a plaintiff must prove the following elements to establish a cause of action based on Aiding and Abetting:

262.     This statute is applicable to all federal criminal offenses. Under the statute, all those who knowingly provide aid to persons committing federal crimes, with the intent of facilitating the crime, are themselves committing a crime by the Defendants MAYOR BYRON BROWN, CRYSTAL RODRIGUEZ-DABNEY ESQ., CHRISTOPHER SCALON, PHILLIP DABNEY JR. ESQ., DANIEL DERENDA, BYRON LOCKWOOD, JOHN FLYNN ESQ.

263.     The Defendants are guilty of Aiding and abetting Officers JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ, as well as other Buffalo Police Officer cover up Federal Crimes. In the eyes of federal law, if you aid and abet someone in the commission of a federal crime, you are just as guilty and just as subject to punishment as if you had committed the crime yourself. Under Title 18 U.S. Code Section 2, anyone who aids or abets a federal crime is punishable as a "principal" (i.e., someone who committed the crime). Aid and abet means assisting somebody in committing or encouraging them to commit a crime.

264.    The Strike force and housing unit which was created by The Defendant MAYOR BYRON BROWN. The BUFFALO POLICE E district is located on Bailey Avenue on the Eastside of Buffalo, NY and has the highest amount of Police Misconduct complaints to Internal Affairs. Many of these Officers were reassigned from the disbanded Strike Force by the CITY OF BUFFALO and they continue to terrorize residents and violate many constitutional rights. Many of these E district officers also came from the Housing unit who worked alongside the strike force breaking civil rights, terrorizing, and killing residents.

265.    The Plaintiff asserts, ALL, one, or some of the Defendants Officers Defendants JOSEPH MULLEN, SHAWN MCCABE, JOSEPH PASZKIEWICZ currently works/have previously worked in the strike force unit/ Housing Unit.

266.    Officers JOSEPH MULLEN, SHAWN MCCABE AND JOESPH PASZKIEWICZ assaulted, unlawfully detained, falsely imprisoned, kidnapped and sexually abused the Plaintiff. The Defendants have aided and abetted in concealing Federal Crimes against the Plaintiff and other residents of the CITY OF BUFFALO. They have helped The named Defendant Officers and other Buffalo Police Officers get away with violating Color of law crimes, misusing their discretion, such as using excessive force or police misconduct.

267.    The CITY OF BUFFALO has set up an elaborate rouse stagged as Internal Affairs accepting complaints from Citizens regarding police misconduct. Internal Affairs purposely omits facts and does not investigate all crimes and violations committed by Buffalo Police Officers. Internal affairs have intimidated and discouraged claimants who may not can afford proper legal representation or understand the legal process.

268.    The CITY OF BUFFALO also set up the Commission of Citizens Rights & Community Relations as another elaborate rouse disguised as being a paid oversight body for check and balances of internal affairs, funded by taxpayers money. This commission is also purposely not investigating crimes and civil right violations committed by Buffalo Police Officers against CITY OF BUFFALO Residents.


## X.  Defamation

### The Defendants Phillip Dabney Jr. Esq. and Crystal Rodriguez Dabney Esq.

269.    Elements of defamation: to prove defamation, you must show that: The statement was false and presented as fact; The statement was communicated to a third party; The statement was made with at least negligence; The statement caused harm to the reputation of the person or entity being defamed.


270.    "A communication is defamatory if, under all the circumstances, it tends to so harm the reputation of an individual that it lowers the individual's reputation in the community or deters others from associating or dealing with the individual." Kefen v Davidson, 241 Mich App 611, 617; 617 NW2d 351, 356 (2000).


271.    One of the key elements in the prima facie case of defamation is the requirement that the statement be published. Therefore, in order for an action of defamation to arise, the defendant must communicate his defamatory statement to someone other than the plaintiff. See Simpson v. Mars, Inc., 929 P.2d 966 (Nev. 1997).


272.    New York Times Co. v. Sullivan, 376 U.S. 254 (1964), The decision held that if a plaintiff in a defamation lawsuit is a public official or candidate for public office, then not only must they prove the normal elements of defamation—publication of a false defamatory statement to a third party—they must also prove that the statement was made with "actual malice", meaning

the defendant either knew the statement was false or recklessly disregarded whether it might be false.

273.    "A plaintiff may overcome a qualified privilege only by showing that the statement was made with actual malice, i.e., with knowledge of its falsity or reckless disregard of the truth." Prysak v RL Polk Co, 193 Mich App 1, 15; 483 NW2d 629, 636 (1992).

274.    Please note that publication to any third person satisfies this requirement for defamation. Thus, publication to the plaintiff's friends, relatives, children and spouse will suffice. Further, the definition of publication is not limited to printed or oral statements. Any action by the defendant that causes a defamatory idea to be communicated to a third person about plaintiff is considered publication. See Kmart Corp v. Washington, 866 P.2d 274 (Nev. 1993)

275.    A statement is defamatory if it tends to damage another's reputation so as to lower her in the esteem of the community. Actual harm is not necessary to make a statement defamatory, but it may be to establish liability regarding certain types of statements and to recover damages.

276.    The Defendants have defamed the Plaintiff by lying regarding the details of the underlying civil case and the merit. The Defendants have defamed the Plaintiff by implying or directly saying she lied regarding the details of her civil case.

277.    The Defendant PHILLIP DABNEY JR. ESQ.. has defamed the Plaintiff by calling her names to people within the community and mutual acquaintances such as crazy, b*tch, and stupid.

278.   The Defendant PHILLIP DABNEY JR. ESQ. defamed the Plaintiff while she was a 2021 candidate for Erie County Legislator, during his Erie County Endorsement interview.

279.   The Defendants defamed the Plaintiff to members of the community while she was a 2021 candidate for the Erie County Legislator.

280.   The Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. did defame the Plaintiff to mutual business clients and acquaintances of the Plaintiff, which effected the Plaintiff's business and nonprofit within the community.

281.   Between (April 2021-June 2021) there was an event hosted by the Delevan Grider Center for early voting. The Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. did defame the Plaintiff by verbally harassing her with her friend Katrina Martin-Bordeaux and loudly yelling that The Plaintiff was telling lies about the Defendant PHILLIP DABNEY JR. ESQ. This was in front of other political candidates and potential voters for the June 2021 primary election. The Plaintiff was a candidate on the ballot for the Erie County Legislator during this time.

282.   On August 19, 2024 the Defendant PHILLIP DABNEY JR. ESQ. did submit an answer to the Erie County Supreme Court regarding details of this case, defaming the Plaintiff. The Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. did notarize the affidavit to the court, knowing it contained numerous lies against the Plaintiff.

283.   Between (2013-2020) The Plaintiff was the president of a non-profit for youth where she worked closely with members of the community such as Councilman Richard Fontanna & now

Councilman Bryon Bollman. Between 2010-2012 the Plaintiff was a Court Appointed Child Advocate through Erie County Family Court. She was a 2010 Miss Buffalo candidate. The owner of a consulting business started in 2013 that helped non-profits and small businesses within the CITY OF BUFFALO. The Plaintiff was a community advocate and a 2021 candidate for the Erie County Legislator.

284.    The lies that have been told by the Defendants surrounding this incident has directly affected the Plaintiff's image, credibility, and standing within the community. It has affected her nonprofit Sports Unlimited of Buffalo Inc. and her 10-year consulting business, Calhoun Consulting.

285.    The Plaintiff has suffered damages due to emotional distress, pain and suffering, loss of business or economic opportunity due to reputational damage.

### Ninth Cause of Action under 28 U.S.C. § 133- Diversity Jurisdiction for committing perjury under 18 U.S. Code § 1621 and 18 U.S. Code § 1623 - False declarations before grand jury or court by the Defendants Phillip Dabney Jr. Esq.

### XI. NYS Penal Law § 210.15 -PERJURY

286.    New York substantive law is controlling in this diversity action. Under New York law, a plaintiff must prove the following elements to establish a cause of action based on Perjury:

1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

287.    Under New York Penal Law § 210.15 you could be charged with perjury in the first degree if you make a false statement under oath that consists of testimony that is material to the proceeding in which it is made.

288.    The act of swearing falsely (or "perjury") occurs when a person makes a false statement which he or she does not believe to be true while either giving testimony or under oath in a subscribed written instrument (such as an affidavit or deposition).

289.    **NYS 210.15 Perjury Second-Degree**: A person is guilty of perjury in the second degree when he swears falsely and when his false statement is (a) made in a subscribed written instrument for which an oath is required by law, and (b) made with intent to mislead a public servant in the performance of his official functions, and (c) material to the action, proceeding or matter involved. Perjury 2nd degree is a Class E Felony.

290.    **The Defendant Phillip Dabney Jr. Esq.** The Defendant Phillip Dabney Jr. Esq. did submit false documents to the Attorney Grievance committee in 2021 regarding the details of this case. The Defendant did make numerous false affirmations signed under oath to the Erie County Supreme Court regarding the Plaintiff and the details of this case between (2021-2022) during the original Legal Malpractice claim. On August 19, 2024 The Defendant did continue to commit perjury when he knowingly submitted a notarized answer to the Erie County Supreme Court with lies regarding the details of this case.

Notarized Statement Submitted to Erie County Supreme Court: August 19, 2024

291.     The Defendant did commit perjury Line 8: *"The Complainant sues for professional legal services under attorney-client breach of retainer, where no contingent retainer agreement ever existed, nor terms or a contingency retainer agreement for continued representation between Plaintiff and Defendant."* (The Plaintiff signed a contingency agreement)

292.     The Defendant did commit perjury Line 9: *"Performance of the contract was completed as of June 11, 2015."*  (The Defendant continued to represent the plaintiff for almost 3 years after this date, which is the day of her 50-H hearing.)

293.     The Defendant did commit perjury Line 10: *"Damages are not available where the flat contract price was paid and completed performance under contract established."* (The Plaintiff never paid a flat fee, as it was a contingency agreement)

294.     The Defendant did commit perjury Line 11: *"Plaintiff's failure on April 21, 2015 to meet a condition precedent to a retainer agreement with Defendant, restrained further representation by the Defendant."* (The Plaintiff was told she had an excellent case by the Defendant after this date and he represented her almost 3 years after)

295.     The Defendant did commit perjury Line 16: *"Defendant's private practice was "wound down" as of October 3-, 2018."*  (The Defendant represented St. Paul's Missionary Church for a case in Erie County Supreme Court from **November 28, 2018- June 17th 2019** until he signed a consent to change attorney) (case# 818630/2018)

296.     Per line 15 of the Defendant's answer he states: *"Employed as Assistant Legal Counsel with Buffalo Municipal Housing Authority [B.M.H.A] as of **November 5, 2018** Defendant was no longer permitted to practice law privately, in compliance with administrative and procedural requirements of BMHA as a State municipal agency."*

297.     The Defendant was appointed as Buffalo City Court Judge by MAYOR BYRON BROWN on December, 2020. He represented his now wife CRYSTAL RODRIGUEZ-DABNEY ESQ. in her divorce filed on **May 27, 2020** well before the date he was appointed. (Case# 804934/2020)

298.     The Defendant PHILLIP DABNEY JR. ESQ. is now a CITY OF BUFFALO Court Judge. Interestingly enough he continues to lie to the courts even as a judge who has taken a judicial oath to uphold the law. This should be a testament of his character and how he has also lied and deceived the Plaintiff for his own financial gain, at the expense of the Plaintiff never receiving relief or justice.

299.     There are talks of The Defendant PHILLIP DABNEY JR. ESQ. becoming the new Buffalo Housing Court Judge. There are many investigations, complaints, and concealments of lead poisoning in young children due to the CITY OF BUFFALO's lack of property oversight. Appointing a Judge who commits perjury, fraud, and will turn a blind eye for self-gain doesn't seem like it would be in the best interest of the people.

### XII. *STATUE OF LIMITATIONS*

300.     Date of Incident: January 31, 2015

   Date of Breach of Deadline missed: January 31, 2018

   Date of Discovery of Fraud: May 26, 2020

   Last Date of Continued wrongdoing: August 19, 2024

301.    **Conspiracy:**  Title 18, U.S.C., Section 241, also known as the Conspiracy Against Rights statute, has a seven-year statute of limitations for offenses that do not result in death, and no statute of limitations for offenses that do result in death. If we apply this 7-year statue from the date of the missed deadline January 31, 2018. The Plaintiff would have until **January 31, 2025** to file a claim. The Plaintiff is within that time.

302.    **Fraudulent Concealment:** The common law doctrine of fraudulent concealment is a legal doctrine that can be used to stop the running of a statute of limitations. This doctrine is used when a defendant conceals their misconduct, preventing the plaintiff from filing a lawsuit on time. The doctrine states that the statute of limitations should begin when the plaintiff discovers their claim, or when they should have discovered it with due diligence. This prevents wrongdoers from using the statute of limitations to avoid punishment.

303.    ***Equitable Estoppable powers,*** preclude a defendant from asserting a statute of limitations defense where the defendant's own intentional misconduct prevented the plaintiff from timely filing suit.  This equitable doctrine, known as equitable estoppel – or, "equitable tolling" – is consistent with the principle that a wrongdoer should not be able to benefit from his own wrong.

304.    A litigant qualifies for equitable tolling only if they establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 363, citing Menominee Indian Tribe of Wis. v. United States, 577 U.S. 250, 255 (2016).

305.    All actions and offenses in the Plaintiff's claim should be tolled due to the continuous fraud, conspiracy, and concealment of crimes. After not being able to obtain an attorney because of the conflicts of interests with the defendants The Plaintiff has been diligently pursuing this claim by requesting all documents after the repeal of 50-A on June 12, 2020 by Governor Andrew Cuomo to be able to adequately prove her claim.

306.    Due to the extraordinary circumstances of fraud and concealment by the Plaintiff's attorney PHILLIP DABNEY JR. ESQ. and the Defendants CITY OF BUFFALO, Internal Affairs, and Citizens Rights Commission executive director CRYSTAL RODRIGUEZ-DABNEY ESQ., the Plaintiff was unable to file her claim within a timely manner.

307.    The Defendant The CITY OF BUFFALO delayed the Plaintiff's lawsuit by conspiring with her Attorney PHILLIP DABNEY JR. ESQ. to commit fraud and purposely deceive the Plaintiff to miss her deadline to file an action by January 31, 2018.

308.    The Plaintiff discovered the Defendants PHILLIP DABNEY JR. ESQ. and The CITY OF BUFFALO's fraud on **May 26, 2020** through a FOIL request from Erie County Supreme Court. The Statue of Limitations should toll from the time the Plaintiff discovered the fraud and collusion by the Defendant the CITY OF BUFFALO and her attorney PHILLIP DABNEY JR. ESQ.

### Gov. Cuomo Covid Order( 228 Days)

309.    Using May 26, 2020 as the date the Plaintiff discovered the fraud/collusion of the Defendants The CITY OF BUFFALO and her attorney PHILLIP DABNEY JR. ESQ..

Additional time of 228 days should be added due to the Covid Order that Govrnor Andrew M. Cumo issued a series of approx 65 executive orders for that suspended procedural deadlines including the statue of limitations. See e.g. Executive Order Number 202 issued March 7, 2020.

As a result, any statue of limitations that began to run and did not expire prior to March 20, 2020 will have 228 days added on to it.

310.    CPLR 2004 governs extensions of time: Except where otherwise expressly prescribed by law, the court may extend the time fixed by any statute, rule or order for doing any act, upon such terms as may be just and upon good cause shown, whether the application for extension is made before or after the expiration of the time fixed.

311.    With the additional 228 days added to May 26, 2020, the Plaintiff's date to toll from would have started from **January 9, 2021.**

312.    For 42 U.S.C §1983 claims there is a 3 year statue of limitations, which means The Plaintiff had until **January 9, 2024** to file action against the Defendants. The date should be tolled due to the continuous fraud, conspiracy, and continuing wrong.

313.    **Statute of Limitation on 18 U.S. Code § 242 the Deprivation of rights under color of law**

The Statute of Limitations for 18 U.S. Code § 242 the Deprivation of rights under color of law is seven years. If tolled from May 26, 2020 the date of discovery of the fraud to conceal the Deprivation of rights, the deadline would be **May 26, 2027**. The Plaintiff is before that timeline.

**"Continuing Wrong Doctrine"**

314.    The "continuing wrong" doctrine is an exception to the general rule that is usually employed "where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act" (*Henry v. Bank of Am.*).

315.   The Mayor of the City Buffalo knowingly shielded the Plaintiff's attorney by appointing him as a CITY OF BUFFALO Court Judge, which direclty made hard for the Plaintiff obtain legal consel to hold PHILLIP DABNEY JR. ESQ. accountable for his actions.

316.   The statue of Limitations should also be able to toll from the date The Plaintiff's Attorney Defendant PHILLIP DABNEY JR. ESQ. was appointed to City Court Judge after she expressed her concerns of legal malpractice to MAYOR BYRON BROWN. He was appointed on December 29th, 2020, 4 months after.  Using the December 29.th 2020 as the last date of wrongdoing, 3 years from that date would be December 29th 2023. With the additional 228 days due to the executive order from Gov. Cuomo the deadline would be **August 13th, 2024.**

317.   On **August 19th, 2024** The Defendant PHILLIP DABNEY JR. ESQ. did submit an notarized affaidvit to Erie County Supreme Court and continued to submit numerous perjured statements regarding the details of this case. The Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. did notarize this statement, having first hand knowledge of the lies told within the affidavit to the court regarding the Plaintiff. This act would have continued to toll the Plaintiff's statue of limitations for the Continued wrong doing.

### Statue of Limitations on Breach of Contract

318.   28 U.S. Code § 2501 - Time for filing suit says every claim of which the USC of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within 6 years after such claim first accrues.

319.   Federal case law says the period runs from the time the fraud is discovered.
The Plaintiff found out about the Fraud the Defendant committed on May 26, 2020 through a FOIL request. **May 26, 2026** is six years after the fraud was discovered. The Plaintiff is filing her action before that time.

320.     If the court uses the initial date the Defendant missed the deadline as a starting point; January 31, 2018, six years from that date would be January 31, 2024. The Plaintiff has an additional 228 days of tolling of time from that date due to the series of executive orders issued by Governor Andrew M. Cumo. With the additional 228 days added to the deadline date, the Plaintiff would have until **September 15, 2024** to file a suit, The Plaintiff is filing her action before that time.

321.     The Plaintiff is requesting that if any of the actions outlined in this claim for her underlying civil rights case are found to have merit but barred by the statue of limitations for her to receive monetary relief from The Defendant PHILLIP DABNEY JR. ESQ. to pay as that would be what the Plaintiff would have recovered yet it have been for his breach.

### Statue of Limitation on Defamation:
### The Defendants Phillip Dabney Jr. Esq. and Crystal Rodriguez Dabney Esq.

322.     Per **Section 11(2)(c) of the 1957 Act** provides that the limitation period for defamation actions is one year from the date on which the cause of action accrued. This limitation period is extendable for a maximum of two years. The last date the Defendant PHILLIP DABNEY JR. ESQ. did defame the Plaintiff was 8/19/2024 on an notarized answer to the Erie County Supreme Court regarding the details of this case. The last date the Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ. defamed the Plaintiff is when she notarized the Defendant PHILLIP DABNEY JR. ESQ.'s answer to the Erie County Supreme Court knowing it contained frudulent information about the Plaintiff regarding the details of this case. The continuing wrong doctrine should toll these actions as they continues to defame the Plaintiff. Two years from that date would be **8/19/2026**, The Plaintiff is before that date.

## Statue of Limitation on Perjury

### The Defendants Phillip Dabney Jr. Esq.

323.    For other types of felony offenses not listed in § 30.10(2)(a), the statute of limitation requires that the "prosecution for any other felony must be commenced within five years after the commission thereof…"

1. **The Defendant Phillip Dabney Jr. Esq.-** The Defendant last committed perjury on 8/19/2024. Five years from that date would be 8/19/2029, the Plaintiff is before that date.

## Statue of Limitations Leaving Public Office:

324.    Misconduct in public office (While person is in office, or within 5 years of them leaving)

1. **The Defendant DANIEL DERENDA** retired from The City of Buffalo Police Department as the Commisionor on Jaunuary 17, 2018. Five years after that time would be **January 17, 2023**. The deadline for that statue should be tolled due to the continuous fraud, conspiracy, and wrong doings.

2. **The Denfendant BYRON LOCKWOOD** retired from the City of Buffalo Police Department as the Commissinor on February 24, 2022. Five years after that time would be **February 24, 2027**, the Plaintiff is before that date.

3. **The Defendant JOHN FLYNN ESQ.** stepped down from as the Erie County District Attorney on April 1, 2024.  Five years after that time woud be **April 1, 2029**, the Plaintiff is before that date.

4. **The Defendant CRYSTAL RODRIGUEZ-DABNEY ESQ.** stepped down as Executive Director for the CCRCR in 2016. Five years after that time would be **2021**. The deadline should be tolled as the Defendant has continued wrong doing by committing conspiracy, defamation and notarizing a perjured statement recently regarding the details of this

case by Defendant PHILLIP DABNEY JR. ESQ. on August 19, 2024.

325.    All the defendants were working illegally outside of the scopes of the designated jobs per the City of Buffalo and Erie County Charter. All above Defendants should be held individually liable. The statue should be tolled as they were conspiring and committing Federal crimes by covering up constitutional violations.


### Additional Time Extention Considerations

326.    The Plaintiff is asking for additional time for all named actions as she went through major life-changing events that prevented her from filing any action.


327.    The Plaintiff was present with her children for the May 14, 2022, racially motivated terrorist attack in Buffalo, NY.  President Joe Biden declared it an act of terror.


328.    The Plaintiff was also involved in FEMA declared natural disaster on December 29, 2022, in Buffalo, NY, which caused her to relocate her entire family to GA February 1, 2023.


329.    The Plaintiff was in a major car accident where she was hit by an non-emergency Ambulance making an unlawful turn during March 2024.

330.    All of these events put the Plaintiff's ability to file an action behind.


331.    After the repeal of NY 50-A police records in June 2020 the Plaintiff has diligently obtained all the paperwork from the CITY OF BUFFALO such as Sworn affidavits, testimonies, transcripts, reports, hand-written notes, complaints and emails, to prove the merits of her case.

332.    Statue of Limitations were created to ensure victims file prompt claims after sustaining injuries. The Plaintiff was under the belief that her claim had been filed. The Defendant The CITY OF BUFFALO conspired with the Plaintiff's attorney Defendant PHILLIP DABNEY JR. ESQ. to miss the deadline to file a claim so the Plaintiff could never recover relief.

333.    The Defendant CITY OF BUFFALO and Erie County did conspire with the Defendants Internal Affairs, Commission of Citizens Rights & Community Relations, and Erie County DA John Flynn to suppress reports and information regarding unlawful strip searches and unlawful entries into residents homes by the Defendants Officers and other Buffalo Police, to avoid criminal prosecution and merit to victims civil claims.

334.    Statue of Limitations were created to ensures that the defendant has access to evidence to defend against the charges (evidence may disappear with time, and memories of details may be questionable). The Defendants in this case have well documented their testimonies through their sworn affidavits submitted to internal affairs, conflicting 50-H deposition transcripts, letters, internal affairs reports, hand-written notes, emails, phone records, Central Booking, Buffalo Police documents, attorney grievance letters, and previous affidavit of merits.

## Equitable Tolling

335.    Equitable tolling is a common principle of law stating that a statute of limitations shall not bar a claim in cases where the plaintiff, despite use of due diligence, could not or did not discover the injury until after the expiration of the limitations period. For example, when pursuing one of several legal remedies, the statute of limitations on the remedies not being pursued will be equitably tolled if the plaintiff can show:

336.    It has been held that equitable tolling applies principally if the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his or her rights. Importantly, it has also been held that the equitable tolling doctrine does not require wrongful conduct on the part of the defendant, such as fraud or misrepresentation.

337.    Originally at common law, "there was no limitation as to the time within which an action might be brought," although actions at tort were limited to the "duration of the life of either party." 1 H.G. Wood, Statutes of Limitations § 1, at 2-3 (2d ed. 1893); James John Wilkinson, A Treatise on the Limitation of Action 2 (1829) ("It was a maxim that a right never dies. . . .").

338.    We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984).... Porter v. Spader, 225 Ariz. 424, 239 P.3d 743, 748 (Ariz. App., 2010).

## **Conclusion**

*"Where justice is denied, where poverty is enforced, where ignorance prevails, and where any one class is made to feel that society is an organized conspiracy to oppress, rob, and degrade them, neither persons nor property will be safe."- Frederick Douglas*

339.    The CITY OF BUFFALO has a new Police Commissioner and with the 2025 election a new mayor and administration. This court should set an example for future administrations that violations of civil rights and acts to cover up thus violations will not be tolerated. If we want a

better Buffalo, accountability and transparency between the government and community is needed. Accountability, starting with holding those accountable who have long upheld this criminal system to terrorize residents of color living on the East Side of Buffalo. If they would assault a pregnant woman, someone of the most vulnerable class, they are capable of anything.

340.    The Plaintiff and her family suffered continuous harassment, blackballing, retaliation, defamation, and threats by defendant(s). They have caused the Plaintiff to be in fear and not mentally strong to file a federal action until she relocated out of state.

341.    Given that the law favors decisions on the merits, and that the plaintiff has a just cause, and has demonstrated a meritorious cause of action, it is respectfully urged that this Honorable Court hold that she has a meritorious cause of action and allow her to proceed to finally obtain justice and the relief she is long overdue. As the Plaintiff's Constitutional Law professor, the late Honorable Judge Joseph Mattina always said, "Justice delayed is a justice denied."

342.    New York Judiciary Law § 487 is a statute that allows an injured party to recover treble damages from an attorney who has engaged in willful misconduct. Judiciary Law § 487 provides that an attorney who: 1) is guilty of any deceit or collusion, or consents to any deceit or collusion, with the intent to deceive the court or any party; or 2) willfully delays his client's suit with a view to his own gain; or willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable, is guilty of a misdemeanor and is liable for treble damages to the aggrieved party.

**WHEREFORE,** Plaintiff Dominique Calhoun demands judgment of **($2,500,000)** Two Million, Five-Hundred Thousand Dollars plus treble damages due to the outrageous and egregious acts on the above counts against the Defendants as individual(s) and/or working in capacity of Erie County/The City of Buffalo/ Buffalo Police, their units, their officers, employees, against and other persons acting in concert or participation with them as stated above, and award the following amounts: a. Compensatory damages in favor of the Plaintiff in an amount to be determined by a jury; b. Exemplary damages in favor of the Plaintiff; c. Costs of this action, including reasonable attorney fees to the Plaintiff pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, U.S.C. 1988 (1976); and, d. Such other relief as the court may deem appropriate.

**RELIEF/DAMAGES**

18 USC 1514 (d) (B) Harassment: $50,000

18 USC 241-(Felony) Breach of rights under color of law- Conspiracy $500,000

18 USC 242- Breach of rights under color of law causing Bodily Injury: $50,000

18 USC 113- Assault- $500,000

18 USC 3571-Denied Proper Warrant (Lack of True Bill) $500,000

18 USC 3571-(Felony) Denied Provisions in the United States Constitution- $500,000

18 USC 112- Harming or Kidnapping or any violation of liberty- $250,000

18 USC 1001- Government Officer lying KNOWINGLY & WILLFULLY- $100,000

18 USC 1016- Lying when administering oaths/certifying acknowledgements-$50,000

18 USC 1589 ( c ) (1) states: The term "abuse or threatened abuse of law or "legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

Pain and suffering, intentional inflection of pain and suffering, emotional distress, damage to reputation, intentional infliction of emotional distress, Loss of consortium, and other monetary and punitive damages the court deems appropriate.

**I swear on the 11ᵗʰ day of September, 2024, under the penalties of perjury under the laws of** ~~New York~~ Texas **which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action proceeding in a court of law.**

Dated: _09/11/2024_

x *Dominique C. Calhoun*

~~xxxxxxxxxxxxxxxxxxx~~
**Dominique Calhoun (Pro Se Litigant); Domcalhoun@yahoo.comm**
Dominique C. Calhoun

State of Texas
County of Harris

**Notary Information:**

Vendayla Monice Jubilee McNeil
Notary Public, State of Texas
10/12/2025

Sworn to and subscribed before me
on 09/11/2024 by Dominique Calhoun.

**Vendayla Monice Jubilee McNeil**

ID NUMBER
13338700-2
COMMISSION EXPIRES
October 12, 2025

NOTARY PUBLIC
STATE OF TEXAS

Electronically signed and notarized online using the Proof platform.